**TECHNICOLOR GOVERNMENT SER-VICES, INC., Petitioner-Appellant,**

**v.**

**NATIONAL LABOR RELATIONS BOARD, Respondent-Appellee.**

No. 84–1027.

United States Court of Appeals,
Eighth Circuit.

Submitted May 18, 1984.

Decided July 12, 1984.

John E. Burke, Sioux Falls, S.D., for petitioner-appellant.

William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D.C., for respondent-appellee.

Before LAY, Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge, and FAGG, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

Technicolor Government Services, Inc. (the Company) petitioned pursuant to § 10(f) of the National Labor Relations Act, 29 U.S.C. § 160(f) (1982), to review and set aside an order issued by the National Labor Relations Board against the Company on November 16, 1983. The Board has cross-applied for enforcement of its order pursuant to § 10(e) of the Act, 29 U.S.C. § 160(e) (1982). We grant the Board's application for enforcement of its order.

## I. Facts

This case was heard by an Administrative Law Judge (ALJ) at Sioux Falls, South Dakota on December 1, 1982, based on an unfair labor practice charge filed by the Union[1] on March 22, 1982. The Company is, and at all material times has been, an employer engaged in commerce within the meaning of § 2(2), (6), and (7) of the Act, 29 U.S.C. § 152(2), (6), and (7) (1982), and the Union is a labor organization within the meaning of § 2(5) of the Act, 29 U.S.C. § 152(5) (1982).

In September of 1978 a majority of the Company's employees, in the appropriate bargaining unit,[2] through a secret ballot designated the Union as its collective bargaining representative. On October 27, 1978, the Union was certified as the exclusive bargaining representative for the unit employees. The Company filed a request for a review of the unit determination with the Board, and the request was denied. The Company did not appeal that denial, nor did it refuse to bargain with the Union. Following certification, the Union and the Company entered into contract negotiations. These negotiations continued, failing to result in an agreement, up until the time this labor dispute was heard by the ALJ.[3]

Before the certification of the Union, the Company had used some of its skilled employees, who fall within the bargaining unit, as "lead" persons (leads). A "lead" is a pay status in which an employee receives an additional twenty-five cents an hour for the period of time in which he or she assumes an assignment which relieves a supervisor of minor supervisory functions. According to the testimony of two of the Company's vice-presidents, leads are appointed pursuant to a memo of request and

---

**1.** Motion Picture Laboratory Technicians, Local 780, and International Photographers of the Motion Picture Industries, Local 666, International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada, AFL–CIO.

**2.** The certified unit is:
All full-time and regular part-time employees employed in the photographic laboratory, product inspection, data management, technical engineering photographic laboratory maintenance, center services and logistics sections, including plant clericals, employed at the Company's Sioux Falls, South Dakota facility; excluding employees employed in user services operations, systems development, systems software, technical engineering computer maintenance, technical communications, applications, training and assistance and data analysis sections, office clerical employees, confidential employees, guards, assistant supervisors, and supervisors as defined in the Act.

**3.** At oral argument, counsel informed us that the parties had entered into an agreement pending the appeal in this case.

justification submitted by a supervisor and approved by these vice-presidents. The Company produced evidence that several designations, removals, and changes of leads had occurred between 1978 and 1982. Since certification, the Union had been notified from time to time of these changes.

By a memo dated January 13, 1982, the Company notified its supervisors of a change in policy regarding the appointment of leads. This change resulted in a drastic reduction in the use of leads. The action was allegedly taken because of cost reductions necessitated by a new contract the Company had entered into with the United States Government. Thirteen of the sixteen bargaining unit employees who were serving as leads at that time lost their lead status. One employee brought this change to the attention of the Union's Business Manager, Andrew Younger. Younger immediately contacted the Company's attorney to inquire about the change. At the several negotiating sessions held later, Younger brought up the subject of the change in policy, asked for negotiation on the issue, and requested restoration with back-pay for the employees who had lost their lead status. The Company refused to negotiate over the issue and maintained that the matter was wholly within the Company's discretion. On March 22, 1982, on behalf of the Union, Younger filed charges with the Board alleging that the Company had committed unfair labor practices in violation of § 8(a)(1) and (5) of the Act, 29 U.S.C. § 158(a)(1) and (5) (1982), by its action with respect to leads.

The ALJ agreed. He recommended that the Board order the Company to: cease and desist from following the current policy on the use of leads; rescind the unilateral change in policy; and restore the status quo by reinstating all employees to their former positions and make them whole for any loss of earnings they may have suffered, including interest. The Board adopted this recommendation with the modification that the Company restore the employees to their former status without prejudice to their seniority rights and other privileges.

## II. Discussion

### a. The Challenge to the Bargaining Unit.

The Union was certified as the exclusive bargaining representative of unit employees in 1978. The Company and the Union then entered into negotiations. The Union filed the unfair labor practice charges at issue here in 1982. As an affirmative defense to these charges, the Company challenged the propriety of the collective bargaining unit certified in 1978. The Company asserts the same challenge on appeal. We hold that the Company has waived its right to challenge the 1978 certification.

■ Under § 9(c) of the Act, 29 U.S.C. § 159(c) (1982), the Board has the authority to certify collective bargaining units. *Magnesium Casting Co. v. NLRB*, 401 U.S. 137, 139, 91 S.Ct. 599, 600, 27 L.Ed.2d 735 (1971); *AFL v. NLRB*, 308 U.S. 401, 405, 60 S.Ct. 300, 302, 84 L.Ed. 347 (1940). However, Board certifications under § 9(c) are not directly reviewable under § 10(f), 29 U.S.C. § 160(f) (1982), as final orders of the Board. In order to challenge certification of a collective bargaining unit, an employer must refuse to recognize a union after its certification. If the union files unfair labor practice charges for refusal to bargain, under § 8(a)(5) of the Act, the employer may then raise the issue of the propriety of the unit as an affirmative defense to the charges. An employer then obtains judicial review of a certification determination via a review of the unfair labor practice charges, under § 10(e) or § 10(f). *Magnesium Casting*, 401 U.S. at 139, 91 S.Ct. at 600; *Boire v. Greyhound Corp.*, 376 U.S. 473, 476–77, 84 S.Ct. 894, 896–97, 11 L.Ed.2d 849 (1964); *Pittsburgh Plate Glass Co. v. NLRB*, 313 U.S. 146, 154, 61 S.Ct. 908, 913, 85 L.Ed. 1251 (1941); *AFL v. NLRB*, 308 U.S. at 406, 407, 409–10, 411, 60 S.Ct. at 302, 303, 304, 304–05; *Willenbrink v. NLRB*, 612 F.2d 1088, 1090 (8th Cir.1980).

■ An employer who fails to follow this procedural course waives the right to con-

test certification. That is, in order to challenge the propriety of a certification, an employer must refuse to recognize a union immediately after the collective bargaining unit has been certified and the union has been elected as the representative for the bargaining unit. Once an employer honors a certification and recognizes a union by entering into negotiations with it, the employer has waived the objection that the certification is invalid. *King Radio Corp. v. NLRB*, 398 F.2d 14, 20 (10th Cir.1968); *NLRB v. Blades Mfg. Corp.*, 344 F.2d 998, 1005 (8th Cir.1965).

■ In this case, the Company entered into negotiations with the Union following the election and certification, and challenged the certification only as a collateral defense to an unrelated unfair labor practice charge filed three and one-half years later. It is clear that the Company has waived its right to challenge the Board's certification of the collective bargaining unit and the Union as that unit's representative.

b. The Change in Policy

The Board held that by unilaterally changing its policy regarding leads, the Company effectively changed the wages, working conditions, and other terms and conditions of employment of the bargaining unit employees who had lost their lead status. The Board also held that failure to notify the Union before the change was made, and failure to offer the Union a chance to negotiate over the question constituted an unfair labor practice under § 8(a)(1) and (5) of the Act.

■ In its brief, the Company argued that the subject of leads was not a mandatory subject of bargaining and that, even if it was, the Union had waived its right to request or demand bargaining on the subject. At oral argument, the Company conceded that the subject was a mandatory subject of bargaining, but argued that it was not required to negotiate with the Union over the subject because, by failing to bring the subject up before the change in policy was made, the Union waived its right

to have the old policy reinstated pending resolution of the issue. We disagree with both contentions. As a threshold matter, we note that the scope of our review is limited to determining whether the Board's order and findings are supported by substantial evidence in the record when it is viewed as a whole. *NLRB v. Mark I Tune-Up Centers, Inc.*, 691 F.2d 415, 416 (8th Cir.1982), *citing, Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951); *see also* 29 U.S.C. § 160(e) and (f) (1982).

■ Under § 8(d) of the Act, an employer is obligated to notify and bargain with a union before it may make any unilateral change in wages, hours, or other terms and conditions of employment. *NLRB v. Katz*, 369 U.S. 736, 742–43, 82 S.Ct. 1107, 1111, 8 L.Ed.2d 230 (1962); *NLRB v. Borg-Warner Corp.*, 356 U.S. 342, 349, 78 S.Ct. 718, 722, 2 L.Ed.2d 823 (1958); *Metromedia, Inc., KMBC-TV v. NLRB*, 586 F.2d 1182, 1187 (8th Cir.1978); *Mackey v. National Football League*, 543 F.2d 606, 615 (8th Cir.1976), *cert. dismissed*, 434 U.S. 801, 98 S.Ct. 28, 54 L.Ed.2d 59 (1977). This proposition applies equally to contracts under negotiation as well as settled collective bargaining agreements. *See Katz*, 3C9 U.S. at 743, 747, 82 S.Ct. at 1111, 1113; *Metromedia*, 586 F.2d at 1187; *McGraw-Edison v. NLRB*, 419 F.2d 67, 77 (8th Cir. 1969). Whether a particular, unilateral change in company policy or practice concerns a mandatory subject of bargaining depends, not on its form but, on its practical effect. *Mackey*, 543 F.2d at 615.

■ The Company's reduction in the use of leads clearly affected the "wages, hours, and other terms or conditions of employment," of those employees who lost, or suffered drastic reductions in, their lead status. The ALJ found as follows:

As a result of this change these employees now serve as leads only occasionally when their supervisor or assistant supervisor is absent. They have lost the additional 25 cents per hour they formerly received, including holidays, vacations,

and other such periods off the clock, and now receive this wage supplement only on the rare occasions when they are selected to serve as a lead in the absence of a supervisor and when actually working on the clock.

The Company argues that there has been no change in employee wages. Leads still obtain twenty-five cents extra per hour when performing as leads, and the employees are receiving the same hourly rate of pay they received previously when they were not performing as leads. This argument is not persuasive. Employees in the bargaining unit are not serving as leads as often as they used to, and so they are receiving less money than they used to receive. Counsel conceded at oral argument that there had been a "substantial reduction in the number of leads." Even though the use of leads was subject to the Company's discretion, the practice of utilizing leads on a regular basis resulted in the practice becoming an integral part of the Company's wage structure and conditions of employment. *See Century Elec. Motor Co. v. NLRB*, 447 F.2d 10, 14 (8th Cir.1971); *McGraw-Edison*, 419 F.2d at 77; *NLRB v. Frontier Homes Corp.*, 371 F.2d 974, 978 (8th Cir.1967); *NLRB v. Wonder State Mfg. Co.*, 344 F.2d 210, 213 (8th Cir.1965). Thus, it is clear that the practical effect of the change in policy was a reduction in the wages of employees in the bargaining unit, who had served previously as leads.

However, the Company argues that the Union has waived its right to compel bargaining over the issue: the Union's failure to bring the issue up during the three and one-half years of negotiation, despite its awareness of several, individual changes in lead status, amounts to a waiver of the issue; or, at least, to a waiver of the right to have the original policy reinstated retroactively. We disagree.

■- First, we note that, at the time the ALJ heard this dispute, the Company and Union had not yet entered into a collective bargaining agreement, but had engaged continuously in negotiations since 1978. It cannot be argued successfully that a Union can be assumed to have waived the statutory right to bargain over any subject it has failed to bring up while negotiations are still pending.

■ Second, any waiver of the statutory right to bargain over a mandatory subject of bargaining must be clear and unmistakable. Waiver will not be assumed. *Proctor & Gamble Mfg. Co. v. NLRB*, 603 F.2d 1310, 1318 (8th Cir.1979); *Metromedia*, 586 F.2d at 1189; *N L Indus., Inc. v. NLRB*, 536 F.2d 786, 788–89 (8th Cir.1976). The Company does not support its argument by pointing to any specific waiver the Union has made. Instead, the Company relies on the inferences which might be drawn from the Union's failure to bring the subject up before the change in policy was made. This is insufficient to support a finding of waiver. Further, the ALJ found specifically to the contrary of the Company's argument as follows:

> [T]he set of circumstances which the Union and the employees in the bargaining unit faced [after the change in policy] was totally different from those confronting the Union with respect to leads at any time before. Thus ... previous individual changes in lead status, although many in number, had never posed a threat to the work of the bargaining unit, nor had any employee ... ever focused the Union's attention on the potential problems such changes represented.

The ALJ also found that, once the Union was made aware of the change regarding leads, it repeatedly: objected to the change; sought negotiation on the subject; and requested restoration of the status quo pending resolution of the issue. The Company steadfastly maintained that the subject was non-negotiable.

Finally, at oral argument the Company conceded that there had been a "substantial" reduction in the use of leads. Thus, this particular change did not parallel previous, individual changes the company had made with regard to leads. This "change in degree", as the Company characterized the new policy, resulted in a "change in kind."

In conclusion, we hold that the Company's unilateral change in its policy and practice regarding the use of leads, without first notifying the Union and offering it a chance to negotiate on the subject, was an unfair labor practice. We also hold that the Union did not waive its right to negotiate on the subject. Accordingly, the Board's petition for enforcement is granted.