**TERRACE GARDENS PLAZA, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 95–1084.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 1, 1995.

Decided Aug. 9, 1996.

James S. Frank argued the cause for petitioner, with whom Steven M. Post, New York City, was on the brief.

William A. Baudler, Attorney, National Labor Relations Board, argued the cause for respondent, with whom Linda R. Sher, Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, and Peter D. Winkler, Supervisory Attorney, Washington, DC, were on the brief.

Before: GINSBURG, ROGERS and TATEL, Circuit Judges.

GINSBURG, Circuit Judge:

In an election supervised by the National Labor Relations Board, the employees of Terrace Gardens Plaza, Inc. (TGP or the Company), chose Local 32B-32J of the Service Employees International Union (Local 32) as their collective bargaining representative. TGP agreed to meet and confer with Local 32 for the purpose of negotiating a collective bargaining agreement (CBA). The Company insisted, however, that it reserved the right to seek judicial review of the Union's certification by the Board rather than be bound by the outcome of the negotiations. Local 32 charged TGP with refusing to bargain in good faith, in violation of § 8(a)(5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(5). The Board agreed and ordered TGP to bargain. The Company now petitions for review and the Board cross-applies for enforcement of the bargaining order.

TGP argues that: (1) the Board wrongfully adopted a *per se* rule that an employer's reservation of its right to judicial review of a union's certification constitutes a refusal to bargain; (2) the Board's certification of Local 32 was barred by a contract already negotiated and implemented, albeit unsigned, between TGP and another union; and (3) in certifying Local 32 the NLRB hearing officer should not have considered the incumbent union's disclaimer of interest in continuing to represent TGP's employees.

We agree with the Board that TGP refused to bargain in good faith when it insisted upon reserving its right to challenge the Union's certification during or after engaging in negotiations. We further hold that the Board's rule that an unsigned contract is not a bar to the conduct of a representation election is both rational and consistent with

the NLRA. Therefore, we do not consider the Company's objections to the Board's reliance upon the incumbent union's disclaimer of interest.

## I. Background

TGP, a cooperative housing corporation employing approximately 14 maintenance and building service workers, had a CBA with Local 670 of the Stationary Engineers, Firemen, Maintenance and Building Service Union (Local 670) from May 1989 through January 1992. In May 1992 the parties reached full agreement on a new 34-month contract. Both parties implemented the new agreement but Local 670 never signed it.

In June 1992 TGP filed an unfair labor practice charge against Local 670 for refusing to sign the agreement. The Regional Director of the NLRB found that Local 670, in order to comply with a decision of the "umpire" under the "no-raid" provision of the AFL-CIO constitution, had disclaimed any further interest or willingness to represent TGP's employees and hence refused to sign the agreement, in violation of §§ 8(b)(3) and 8(d) of the NLRA, 29 U.S.C. §§ 158(b)(3), 158(d). The Regional Director decided not to seek a remedy for this "technical" violation, however, in view of Local 670's disclaimer and Local 32's having meanwhile petitioned the Board to conduct a representation election. The Regional Director concluded that seeking remedial action, which would delay processing Local 32's petition, "would not effectuate the policies of the Act."

At a hearing on Local 32's representation petition, TGP asserted that its unsigned contract with Local 670 was a bar to an election. The hearing officer, *sua sponte*, entered into evidence a telefax copy of Local 670's disclaimer of interest. The Company objected that it had never seen the disclaimer, which was dated June 15, 1992 but bore a facsimile transmission date of November 4, 1992; that no one had authenticated the document; and that TGP was not given an opportunity to cross-examine a witness regarding the circumstances of its creation. Despite TGP's objections, the Regional Director ordered that an election be held. In dismissing TGP's contract bar argument, he concluded

that even if Local 670 had unlawfully refused to execute an agreement it had reached with the Company, "in view of [the] subsequent disclaimer [Local 670] was directed to submit under the no-raid procedures of the AFL-CIO, I would find such disclaimer to effectively remove the contract as a bar." The Board thereafter denied the Company's request for review, noting that "there is no signed contract that may act as a bar to the [election] petition."

In a January 1994 election TGP employees voted 14–0 in favor of Local 32. Counsel for the Union then wrote the Company asking to set a date for the opening of negotiations. TGP's counsel responded by letter, as follows:

> While Terrace Gardens continues to believe that the NLRB erroneously certified Local [32] as the bargaining representative of its employees and will seek judicial review thereof at the appropriate time; if there are matters that you care to discuss with me or if you have a proposal to resolve the outstanding issues between our respective clients, please provide me with a proposal or agenda and I will give your proposal my immediate attention.

In response to a second letter from Local 32, counsel for TGP wrote:

> I will be happy to discuss any outstanding issues which may exist between our respective clients at a time and location that we may mutually agree upon.
>
> In regard to any discussions which take place, any conclusions or agreements will have to be made subject to the final judgment of the federal courts as to which labor organization actually is the representative of our client's employees (should that remain unresolved after our discussions) and the other issues that are outstanding in regard to the NLRB proceedings.

Rather than answer TGP's second letter, the Union charged the Company with refusing to bargain in good faith, in violation of § 8(a)(5) of the NLRA. The Board so held, giving rise to the present petition for review and the Board's cross-application for enforcement.

## II. Analysis

■ Our review of the Board's unfair labor practice finding is for substantial evidence in the record as a whole. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–88, 71 S.Ct. 456, 464–65, 95 L.Ed. 456 (1951). We will uphold the NLRB if its conclusions are based upon reasonable inferences drawn from the facts as it found them. *Peoples Gas System, Inc. v. NLRB*, 629 F.2d 35, 42 (D.C.Cir.1980). Our review of a Board rule of general application, such as the contract bar rule (although adopted in an adjudication rather than a rulemaking proceeding), is "for consistency with the Act, and for rationality." *Beth Israel Hosp. v. NLRB*, 437 U.S. 483, 501, 98 S.Ct. 2463, 2473, 57 L.Ed.2d 370 (1978).

We take up first the Board's finding that TGP refused to bargain in good faith with Local 32. Then we examine TGP's attempt to invoke the contract bar rule and the Board's refusal to consider an unsigned contract as a bar to the conduct of an election.

### A. Refusal to Bargain

■ Under § 8(a)(5) of the NLRA, it is an unfair labor practice for an employer "to refuse to bargain collectively with the representatives of his employees." 29 U.S.C. § 158(a)(5). Under § 8(d), the employer and its employees have a mutual obligation "to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment." 29 U.S.C. § 158(d). TGP insists that its willingness to meet and discuss any and all issues with Local 32 was unequivocal. Because counsel for TGP wrote, however, that "any conclusions or agreements will have to be made subject to the final judgment of the federal courts as to which labor organization actually is the representative of our client's employees," the Board concluded that TGP had in effect refused to bargain.

TGP characterizes the Board's position as a *per se* rule against an employer reserving "its statutory right, pursuant to § 10(f) [of the NLRA, 29 U.S.C. § 160(f),] to seek judicial review of the Board's certification of a union as the exclusive bargaining representative of its employees"; the only way for an employer to avoid violating § 8(a)(5) is to waive its right to review, either expressly or implicitly, by agreeing unconditionally to be bound by the negotiations. The Company protests that it "can't win: if it fails to seek review of the Board's order, the 'refusal to bargain' finding remains unchallenged; and if it seeks review of all the bases for that charge, then the Board will urge that seeking such review itself shows that Terrace Gardens never intended to bargain."

■ TGP's supposed quandary reflects a fundamental misunderstanding of the statutory scheme. A Board order directing that an election be held, or thereafter certifying the prevailing union as the representative of the employees, is not final agency action subject to judicial review under § 10(f). *Boire v. Greyhound Corp.*, 376 U.S. 473, 476–77, 84 S.Ct. 894, 896–97, 11 L.Ed.2d 849 (1964). Judicial review is available only if the employer refuses to bargain and is found, in a final order of the Board, to have violated § 8(a)(5). *See, e.g., American Fed'n of Labor v. NLRB*, 308 U.S. 401, 409, 60 S.Ct. 300, 304, 84 L.Ed. 347 (1940). The employer may then petition the court of appeals for review and argue the invalidity of the union's certification as an affirmative defense to the unfair labor practice charge. *Boire*, 376 U.S. at 477, 84 S.Ct. at 896. Section 9(d) of the NLRA, 29 U.S.C. § 159(d), facilitates this process by requiring that the underlying "certification and the record of [the representation proceeding] shall be included in the transcript of the entire record" filed in the court of appeals.

Therefore TGP is not foreclosed from obtaining judicial review either of the Board's finding that it committed an unfair labor practice or of its certification of Local 32 as the representative of the Company's employees. If TGP prevails on its affirmative defense, then the certification will be held invalid and the Board's finding that it committed an unfair labor practice will be vacated. Alternatively, the Company may avoid the unfair labor practice charge altogether by agreeing unconditionally to bargain. It may negotiate with, or challenge the certification of, the Union; it may not do both at once.

TGP nonetheless insists that a party to a collective bargaining relationship commits an unfair labor practice by demanding that the other side forego its right to legal redress as a condition precedent to bargaining. According to TGP, the Board adopted that very position in *Stackpole Components Co.*, 232 N.L.R.B. 723, 1977 WL 9178 (1977). More precisely, however, the Board held in that case that the employer unlawfully refused to bargain when it conditioned an agreement upon the union's withdrawal of pending unfair labor practice charges and a Title VII complaint against the employer. *Id.* at 733. As the Board points out, *Stackpole* merely illustrates the principle of which TGP has run afoul, namely, that a party may effectively refuse to bargain when it agrees to bargain only subject to certain conditions.

At oral argument, TGP contrasted the holding in *Stackpole* with the Board's encouragement of—indeed insistence upon—conditional negotiations in *Dresser Indus., Inc.*, 264 N.L.R.B. 1088, 1982 WL 23778 (1982). There the Board held that bargaining must proceed despite the pendency of a decertification proceeding which, if granted, would set the negotiations to nought. There is, however, an essential distinction between *Dresser* and this case. A decertification petition is initiated by employees, not by the employer. 29 U.S.C. §§ 159(c)(1)(A)(ii), 159(e)(1). The pendency of the decertification petition in *Dresser* therefore posed no obstacle to the employer's continuing to bargain with the union in good faith; it was not the employer that was disputing the union's legitimacy as the bargaining representative.

When, as happened here, the employer reserves the right (*i.e.*, implicitly threatens) to challenge the union's certification in the court of appeals, it is trying to avoid the necessity to choose between the alternatives it has under the statute. As we explained above, the employer must either bargain unconditionally or, if it wants to contest the union's right to represent the employees, refuse to bargain and defend itself in an unfair labor practice proceeding. If Local 32 was improperly certified—a question that we address below—then TGP did not unlawfully refuse to bargain; if the Union was properly certified, then the Company did unlawfully refuse to bargain with it.

## B. The Contract Bar Rule

Section 8(d) of the NLRA provides that the obligation to bargain collectively includes the "execution of a written contract incorporating any agreement reached if requested by either party." 29 U.S.C. § 158(d). An unexecuted CBA is valid and binding upon the parties, *Automobile Mechanics Local No. 701, Int'l Ass'n of Machinists and Aerospace Workers*, 280 N.L.R.B. 1312, 1315, 1986 WL 54043 (1986), but (apart from certain circumstances not present here) only a signed CBA bars a rival union from petitioning for a new representation election. *Compare NLRB v. Arthur Sarnow Candy Co., Inc.*, 40 F.3d 552, 557 (2nd Cir.1994) (contract a bar for up to three years) *with Appalachian Shale Products Co.*, 121 N.L.R.B. 1160, 1162 (1958) (contract no bar if not "signed by all the parties before [election] petition is filed").

TGP argues that it is "irrational," as well as contrary to precedent, for the Board to deprive an unexecuted contract of its effect as a bar to an election where, as here, the failure to execute is itself an unlawful act. Upon that premise, the Company contends that the Board should have held that the election petition filed by Local 32 in June 1992 was barred by the CBA between TGP and Local 670, which was effective when it was agreed upon by the Company and the union, notwithstanding Local 670's unlawful refusal to sign it in May 1992. Although it never actually signed the CBA, Local 670 conducted itself as if the new contract was in force; for example, the union continued to receive dues checked off by the employer and to provide employee benefits. The Regional Director of the Board acknowledged that Local 670's failure to execute the contract was a violation of the Act. If the Regional Director had ordered Local 670 to comply with the law by signing the agreement with TGP, the contract bar would have been raised. Instead, because Local 670 filed a disclaimer of interest with the Board, the Regional Director determined that a remedy for the union's failure to sign "would not effectuate the policies of the Act." While that decision

is not directly before the court, it does bear upon the Board's ultimate decision not to apply the contract bar rule, which is before the court.

TGP directs our attention to the Board's earlier decision in *Food, Drug, Beverage Warehousemen and Clerical Employees Local 595, Int'l Bhd. of Teamsters*, 268 N.L.R.B. 1106, 1984 WL 36078 (1984) (*Local 595*), another case in which the union filed a disclaimer of interest in representing the employees after refusing to sign a fully negotiated agreement. The Board held that because the obligation to sign attached before the union disclaimed interest, the union's refusal violated § 8(b)(3). Accordingly, the Board required the union to sign the agreement. *Id.* Similarly, in *East Mfg. Corp.*, 242 N.L.R.B. 5, 7, 1979 WL 9034 (1979), the Board rejected an incumbent union's disclaimer of interest and refused to certify a rival union while a CBA was in force; and in *Estate of Bella Moses*, 247 N.L.R.B. 144, 144–45, 1980 WL 11013 (1980), the Board declined to honor the disclaimer of an incumbent union that, after six months of negotiation, had reached agreement with the employer upon nearly every issue.

TGP also sees the Board, by refusing to issue a remedial order against Local 670 and by honoring the disclaimer that the Union made under pressure from the AFL–CIO, as in effect condoning the Union's unfair labor practice. The Company argues that the Board's present decision is therefore inconsistent with the precedent set in *Mack Trucks, Inc.*, 209 N.L.R.B. 1003, 1004, 1974 WL 4804 (1974). There the Board held that a directive issued under the AFL–CIO's no-raiding procedure could not "be used to supersede a binding [CBA] interposed as a bar to an immediate election." Here, according to TGP, the Board allowed the AFL–CIO, in collaboration with Locals 670 and 32, to use the no-raid procedure to just that end; as a result, the AFL–CIO disrupted a stable bargaining relationship and substituted the union it preferred for the representative chosen by the employees. Moreover, the Company says, between Local 670's disclaimer and the election of Local 32 the employees lost health and pension benefits and access to a negoti-

ated grievance procedure, all because the former union refused to execute the renewal contract. The "laboratory conditions" required for a fair election, *see General Shoe Corp.*, 77 N.L.R.B. 124, 127 (1948), enf'd, 192 F.2d 504 (6th Cir.1951), were thereby compromised, and TGP employees were denied an opportunity freely to choose their representative.

The Board responds, first, that the court should defer to its administration of the contract bar rule, which the Board devised in order to stabilize existing employer-union relationships. *See Local 1545, United Bhd. of Carpenters and Joiners of Amer. v. Vincent*, 286 F.2d 127, 131 (2d Cir.1960) ("contract-bar policy [is] one which the Board in its discretion may apply or waive as the facts of a given case may demand in the interest of stability and fairness in collective bargaining agreements"); *see also Leedom v. International Bhd. of Elec. Workers, Local Union No. 108, AFL–CIO*, 278 F.2d 237, 242 (D.C.Cir.1960) (Board's judgment in implementing contract bar "entitled to great weight").

Second, the Board explains why it treats a contract as a bar only if it has been signed by all the parties before an election petition is filed. The Board used to make an exception where "the parties consider[ed an unsigned CBA] properly concluded and put into effect some or all of its provisions." *Appalachian Shale*, 121 N.L.R.B. at 1162. This made administration of the doctrine "unduly complex," however. In the quoted case the Board adopted a bright line test in order to simplify and clarify the rule; its purpose was to avoid protracted litigation, which had frustrated the Board's policy of expediting representation proceedings, *see Bowling Green Foods, Inc.*, 196 N.L.R.B. 814, 815, 1972 WL 12504 (1972).

Third, the Board denies that TGP was prevented from providing fringe benefits and keeping the grievance procedure in place until a contract could be negotiated with Local 32. The only restriction upon TGP was that it not manipulate employment conditions in order to influence the election. *See NLRB v. Exchange Parts Co.*, 375 U.S. 405, 409–10, 84 S.Ct. 457, 459–60, 11 L.Ed.2d 435 (1964).

■ We conclude that the Board's application of the contract bar in this case is both consistent with the Act and rational. *Beth Israel Hosp.*, 437 U.S. at 501, 98 S.Ct. at 2473. First, § 8(d) of the NLRA does not speak to the contract bar rule; it requires only that a fully negotiated agreement be signed, not that an unsigned agreement be treated as if it were signed. Whether Local 670 committed an unfair labor practice by refusing to sign the agreement, and whether the Board should have remedied any such violation, are simply not at issue here. *Cf. NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 138, 95 S.Ct. 1504, 1510, 44 L.Ed.2d 29 (1975) (decision not to issue complaint not subject to review under NLRA). Second, the contract bar rule was devised by the Board in order to accommodate two potentially conflicting objectives: (1) stabilizing the collective bargaining relationship; and (2) effectuating the employees' choice with regard to representation. It is not irrational for the Board, in pursuit of these two goals, to provide that a contract that has not been signed, for whatever reason, is no bar to its holding a representation election. A signed agreement more strongly suggests a stable bargaining relationship that, as the Board says in its brief, "warrant[s] insulation from election proceedings." While any such bright line rule may be either over- or under-inclusive or both, the Board's experience is that a more discriminating approach invites employers and unions to engage in prolonged litigation over nice questions about the binding character of their CBA, which could both destabilize the bargaining relationship and postpone the realization of the employees' preference.

TGP has not pointed to any analogous case in which the Board has departed from the requirement of a signed contract. While it is true that in both *Local 595*, 268 N.L.R.B. at 1106, and *Estate of Bella Moses*, 247 N.L.R.B. at 145, the Board required the union to honor an unexecuted but fully negotiated contract, notwithstanding the union's attempt to disclaim interest, in neither case was the employer proffering the contract as a bar to an election. In both *East Mfg.*, 242 N.L.R.B. at 7, and *Mack Trucks*, 209 N.L.R.B. at 1004, the Board did invoke the contract bar rule in the face of a disclaimer by the incumbent union, but in neither case was the contract unsigned. In sum, the key ingredients in the present case—a negotiated but unexecuted agreement, an outside union petitioning for an election, and the incumbent union disclaiming interest in the unit—are not all to be found in any one case cited by TGP.

The closest case is *C & W Lektra Bat*, 209 N.L.R.B. 1038, 1974 WL 4893 (1974), *enf'd*, 513 F.2d 200 (6th Cir.1975), in which the employer refused to sign a fully negotiated contract and subsequently filed a representation petition pursuant to § 9(c)(1)(B). The Board found that the employer had refused to bargain, in violation of § 8(a)(5), and dismissed the representation petition, adding this dictum, *sotto voce* as it were, in the margin: "We note that the contract would be a bar thereto." 209 N.L.R.B. at 1040 n. 6. "Would be" if what? If the contract had only been signed, we suppose. Whatever the Board had in mind with this use of the subjunctive (conditional, counterfactual?), the Board did not say that the contract "was a bar," and what it did say is too obscure to constitute an inconsistency that the Board must clarify in this case.

■ Finally, TGP urges that whenever a bargaining representative is required by law to sign an unsigned contract but does not do so, the Board must "deem" the contract executed "as of the date of the unlawful refusal to sign it." In effect, TGP is asking the court to force upon the Board an exception to the signature requirement that the Board made intentionally unexcepted in order to ease its administration of the contract bar rule. TGP's proper recourse is to the Board or, failing that, to the Congress. It is not the role of the court to promulgate new rules, or exceptions to existing rules, in order to effectuate one statutory purpose (employee choice) at the expense of another (stability). Once we conclude, as we have, that the contract bar rule and the signature requirement corollary thereto are reasonably calculated to reconcile those potentially conflicting objectives, our job is at an end.

### III. Conclusion

We uphold the Board's finding that TGP refused to bargain with Local 32. The employer's choices were either to vindicate its right to judicial review by challenging the certification of Local 32 as an affirmative defense in this unfair labor practice proceeding, or to accept the certification and bargain unconditionally with Local 32; TGP could not, however, both negotiate with the union and preserve its right to challenge the Union's certification as the representative of TGP's employees.

We further hold that the Board's absolute rule that an unsigned contract with one union is no bar to the election petition of another union is reasonable and consistent with the NLRA. Therefore we have no occasion to decide whether the hearing officer in this case erred in considering Local 670's disclaimer of interest as a reason for granting Local 32's election petition. Accordingly, we deny TGP's petition for review and grant the Board's cross-application for enforcement of the bargaining order.

*So ordered.*