**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| JILL HAWKEN COFFMAN, Regional Director of Region 20 of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD, *Petitioner-Appellee*, | No. 17-17413<br><br>D.C. No. 4:17-cv-05575-YGR |
| v. | OPINION |
| QUEEN OF THE VALLEY MEDICAL CENTER, *Respondent-Appellant*. | |

Appeal from the United States District Court
for the Northern District of California
Yvonne Gonzalez Rogers, District Judge, Presiding

Argued and Submitted June 14, 2018
San Francisco, California

Filed July 16, 2018

Before: Mary M. Schroeder and Ronald M. Gould, Circuit Judges, and Miranda M. Du,[*] District Judge.

Opinion by Judge Schroeder

---

[*] The Honorable Miranda M. Du, United States District Judge for the District of Nevada, sitting by designation.

## SUMMARY[**]

### Labor Law / Preliminary Injunction

The panel affirmed the district court's entry of a preliminary injunction, pursuant to Section 10(j) of the National Labor Relations Act ("NLRA"), requiring the employer to engage in unconditional bargaining with a union.

The panel held that an employer cannot begin unconditional bargaining and later withdraw recognition because such actions interfere with the union's collective bargaining rights protected by the NLRA. The panel held that the Regional Director of the National Labor Relations Board had shown a sufficient likelihood of success in establishing its underlying position that the employer recognized the union and engaged in unconditional bargaining before withdrawing recognition and refusing to bargain in violation of Section 8(a)(1) of the NLRA. The panel held that the Director established a continuing threat of irreparable harm to the union's collective bargaining rights to support the extraordinary remedy of injunctive relief. The panel also held that the harm to the union outweighed the harm to the employer. The panel further held that the district court did not abuse its discretion in balancing the equities, and in finding that injunctive relief in this case was in the public interest.

The panel held that the Director submitted sufficient evidence to establish a likelihood of success and irreparable

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

harm with regard to the union's claim that the employer discriminated against an employee for his union activity in violation of Section 8(a)(1) and (3) of the NLRA.

## COUNSEL

Ronald J. Holland (argued), Philip Shecter, and Ellen Bronchetti, DLA Piper LLP, Menlo Park, California, for Respondent-Appellant.

Rebecca J. Johnston (argued), Attorney; Richard J. Lussier, Supervisory Attorney; Elinor L. Merberg, Assistant General Counsel; Jayme L. Sophir, Associate General Counsel; Peter B. Robb, General Counsel; National Labor Relations Board, Washington, D.C.; for Petitioner-Appellee.

## OPINION

SCHROEDER, Circuit Judge:

It is a well-settled principle of labor relations law that an employer cannot start unconditional bargaining with a union and then quit when negotiations do not go well. In this case, a Regional Director ("Director") of the National Labor Relations Board ("Board") believed the employer did just that. The Director successfully applied for an injunction pursuant to Section 10(j) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 160(j), requiring the employer to engage in unconditional bargaining. In this appeal from that injunction, the employer contends the Director lacked a sufficient likelihood of success in establishing its underlying position that the employer recognized the union and engaged

in unconditional bargaining before withdrawing recognition and refusing to bargain.  According to the employer, it did nothing more than bargain conditionally to preserve its right to challenge the results of the union election.

The record shows that the employer had considerable dealings with the union following the union's certification, including discussions that resulted in agreements over some hours and working conditions, and that these negotiations took place before the employer made any official challenge to the certification.  We therefore hold that the Director has shown a sufficient likelihood of success in establishing a withdrawal of recognition and refusal to bargain unconditionally, as well as a continuing threat of irreparable harm to the union's collective bargaining rights, to support the extraordinary remedy of injunctive relief.  We affirm the District Court's entry of the preliminary injunction.  We vacate the stay previously entered by a motions panel of our Court.

## Background

### I.  Factual history

#### A.  Employer's withdrawal of union recognition

The employer in this case is Queen of the Valley Medical Center ("QVMC"), which operates an acute-care medical facility in Napa, California.  The union is the National Union of Healthcare Workers ("Union").  The employee bargaining unit consists of nonprofessional and technical employees at QVMC's facility.  In the mail ballot election held on November 15, 2016, a majority of eligible bargaining-unit employees voted by a wide margin for the Union's

representation. QVMC objected to the election results, but the Director overruled those objections and, on December 22, 2016, certified the Union as the employees' bargaining representative.

QVMC then filed a request for review of the Union's certification with the Board on January 9, 2017, but the Board denied that request on February 28, 2017. The first formal communication from the employer to the Union of a refusal to recognize the Union came weeks later, on March 16, 2017. On that day, QVMC sent the Union a letter asserting that the mail ballot election was flawed and demanding that the Union "stipulate to a new in-person election." If the Union refused, QVMC stated, it would "engage in a 'technical refusal to bargain,'" by "formally notify[ing] the Union that [QVMC] believes the unit certification was faulty and . . . refuse to bargain with the Union so that [QVMC could] pursue its review of the certification in the courts." QVMC stated that it would "discuss the terms of a collective bargaining agreement [but] with the mutual understanding that it [would] only take effect if and when all of [QVMC's] appeals in court are denied."

This case is before our Court on an injunction because, prior to the March 16 letter, QVMC had extensive discussions with the Union about working conditions and schedules for members of the bargaining unit. Before QVMC's January 9 request for review of the Union's certification, QVMC's Directors of Labor and Human Resources arranged a meeting with the Union to negotiate the schedule and job assignment of a bargaining-unit employee. During these communications, QVMC's agents did not indicate to the Union that QVMC was bargaining conditionally by reserving its right to contest the Union's certification. The Director

therefore concluded injunctive relief would be appropriate and the District Court agreed.

The record before the District Court reflects the extent of the parties' dealings with each other after QVMC's request for review was denied on February 28, 2017, but before QVMC sent its "technical refusal to bargain" letter on March 16. QVMC provided information to the Union that was relevant for the full collective bargaining agreement and promised to respond further "as [data became] available." QVMC stated that it would respond to the Union's proposed dates for the full bargaining session as well. During the same time period before March 16, QVMC proposed dates and attempted to schedule a meeting with the Union regarding bargaining-unit phlebotomists' schedule changes. Also during this time period, QVMC and the Union arranged for a Union representative to attend a bargaining-unit employee's investigatory meeting. On March 2, the Union requested information from QVMC regarding changes to the schedules of bargaining-unit employees in the Sterile Processing Department and asked QVMC to cease and desist from implementing the changes until the parties could discuss the changes. QVMC met with the Union and employees the same day to address the proposed scheduling changes. At no time during this period after certification and before March 16, did QVMC's agents indicate or communicate to the Union that QVMC was bargaining conditionally and reserving a right to contest the Union's certification.

QVMC's delay in communicating its intention to contest the Union's certification resulted in a loss of Union support. Following the Union's certification in December 2016, employees elected approximately thirty bargaining team members to represent them in the full bargaining

negotiations.  From January through March 2017, the Union held monthly bargaining team meetings at QVMC's facility and thirty or more unit members attended.  After QVMC sent its "technical refusal to bargain" letter in March 2017, employee attendance at the bargaining team meetings fell to fourteen employees in April, twelve employees in May, and by November, only nine.

The employees who attended the meetings in April and May, after QVMC sent the March 16 letter, expressed frustration with the Union's ineffectiveness at representing them, and indicated that it was becoming harder to maintain Union support.  Employees informed the Union that they feared retaliation and were not willing to "stick their necks out" for the Union.  Some unit members resigned their bargaining team positions or quit their employment at QVMC.  Employees in several departments indicated that QVMC's hostility toward the Union created a tense work environment, and some employees refused to participate in Board proceedings out of fear of retaliation.  Employees who previously opposed QVMC's unilateral changes later expressed reluctance to, and that they perceived futility in, fighting such changes given the Union's perceived ineffectiveness.

The record before the District Court also reflects that following the March 16 letter, the Union's representative was prevented from accessing department break rooms, where she previously had access, and she noticed an increase in QVMC security guard presence around her.  QVMC's managers prevented her from speaking with unit members as well, and bargaining unit members expressed reluctance to speak with her.

### B.  Employer's discrimination against employee Arroyo for union support

Even before the Union election in November 2016, things did not go smoothly between the Union and QVMC.  Before the election, QVMC transferred a well-known Union supporter, Miguel Arroyo, to a different shift at its facility, even though Arroyo had worked with his wife in the same department on the same shift for three years.  Arroyo had worn Union buttons and appeared on the Union's flyers and social media page.  According to an affidavit submitted by a QVMC employee, after discovering Arroyo's photo on the Union's social media page, Arroyo's supervisor wanted to make Arroyo "hurt" for his Union activity and concluded that changing Arroyo's schedule would create transportation issues for his family.  The supervisor structured the shift change so that it would not appear retaliatory and told Arroyo that the change was based on QVMC's policy that spouses were not allowed to work the same shift in the same department.  QVMC had not, however, enforced its policy in the past.  The record reflects that Arroyo's transfer occurred a few days before the November 2016 Union election.

## II.  Procedural history

The Union filed a series of unfair labor practice charges in early 2017, alleging that QVMC violated Section 8(a)(1), (3), and (5) of the NLRA.  *See* 29 U.S.C. § 158(a)(1), (3), (5).  The Union filed its first charge on January 20, 2017, and amended it on February 1 and again on February 14, asserting that QVMC discriminated against employees for supporting the Union, made unlawful unilateral changes to employee schedules and other working conditions, and failed to timely provide the Union with relevant bargaining information.

After QVMC's March 16 "technical refusal to bargain" letter, the Union filed a second charge on April 3, 2017. This charge asserted that QVMC threatened to withdraw and then withdrew recognition of the Union, threatened to stop and did stop unconditional bargaining with the Union, and failed to furnish the Union with relevant bargaining information. The Union's third and fourth charges on April 21, 2017, claimed that, at an investigatory meeting, QVMC denied an employee's right to Union representation, and that QVMC had retaliated and discriminated against employees for Union activity, made unilateral changes to terms and conditions of employment, and then, in March 2017, withdrew recognition of the Union.

On the basis of the Union's charges, the Director issued an administrative complaint on May 31, 2017, and, after receiving authorization from the Board's General Counsel, petitioned the District Court on September 26 for temporary injunctive relief under Section 10(j) of the NLRA, *id.* § 160(j). The petition asked the District Court to order QVMC to cease and desist from engaging in the alleged unfair labor practices, restore the Union's position to the status quo prior to QVMC's withdrawal of recognition, post copies of the District Court's order at QVMC's facility, and read the District Court's order to employees. Along with the Director's petition for an injunction, the Director submitted the administrative record, which included affidavits of QVMC employees and Union representatives as well as e-mails, letters, and agreements between QVMC and the Union.

The District Court granted the Director's request for a preliminary injunction on November 30, 2017. The District Court found that the Director demonstrated a likelihood of success on the merits of the claims that QVMC violated

Section 8(a)(1), (3), and (5) by refusing to bargain unconditionally, interfering with employee rights, and discouraging union membership. *See id.* § 158(a)(1), (3), (5). The court explained that the Director presented persuasive evidence that QVMC engaged in unconditional bargaining with the Union after the Union election until QVMC's letter of March 16, and that QVMC subsequently withdrew its recognition of the Union and refused to bargain unconditionally in violation of Section 8(a)(1) and (5). *See id.* § 158(a)(1), (5). The District Court also found that the Director was likely to succeed on the claim of unlawful discrimination against Arroyo, in violation of Section 8(a)(1) and (3), because the Union's evidence established a prima facie case of discrimination and it was unlikely QVMC would succeed in showing that it would have treated Arroyo the same way absent his Union activity. *See id.* § 158(a)(1), (3).

The District Court further found that the Union faced a likelihood of irreparable harm, because employee attendance at Union meetings had fallen and employees feared retaliation and hostility for their Union activity. What harm there may have been to QVMC from being required to bargain with the Union could not offset the Director's showing of irreparable harm to the Union from QVMC's actions. Public interest favored enjoining QVMC as well, according to the court, because "injunctive relief in the context of an unlawful withdrawal of recognition case is particularly appropriate." *Coffman v. Queen of the Valley Med. Ctr.*, No. 17-cv-05575-YGR , at 7 (N.D. Cal. Nov. 30, 2017) (order granting preliminary injunction). The court squarely rejected QVMC's position that an injunction in this case would unfairly insulate the Union's certification from judicial review, stating that "a technical refusal defense 'does not immunize the employer from injunctive relief . . . . [;

e]xposure to an unfair labor charge and the possibility of [Section 10(j)] injunctive relief is a risk the employer must choose to bear when engaging in a technical refusal to bargain.'" *Id.* (quoting *Kendellen v. Interstate Waste Servs. of N.J.*, No. CIV. 06-5694 (SRC), 2007 WL 121435, at *3 (D.N.J. Jan. 11, 2007)) (alterations in original).

On appeal, QVMC principally contends that the District Court erred in finding that the Director is likely to succeed on the refusal to bargain charge, because QVMC never recognized the Union.  QVMC asserts that it bargained conditionally with the Union to challenge the Union's certification, and that any unfair labor practice QVMC committed was necessary to preserve its right to challenge the certification.  QVMC asserts that the District Court's injunction is unfair because it requires unconditional bargaining and results in QVMC's waiver of the right to challenge the Union's certification.  The Director, however, contends that QVMC waived its challenge to the certification by recognizing the Union and bargaining with it unconditionally after the Union's certification, and then later, on March 16, unlawfully tried to withdraw that recognition. The Director thus concludes that QVMC may no longer challenge the Union's certification.

As for the Arroyo discrimination claim, QVMC challenges the evidentiary basis for the finding of discrimination against Arroyo and contends that Arroyo himself faces no likelihood of irreparable harm.  The Director responds that the evidence is sufficient and that she need not show a likelihood of irreparable harm as to Arroyo individually, apart from harm to the unit as a whole.

We have jurisdiction under 28 U.S.C. § 1292(a)(1), and we affirm the District Court's injunction in all respects.

## Discussion

This case involves some of the most fundamental provisions of the NLRA—Section 8(a)(1), (3), and (5). *See* 29 U.S.C. § 158(a)(1), (3), (5). Section 8(a)(5) is intended to protect union activity and collective bargaining rights by making it an unfair labor practice "to refuse to bargain collectively with the representatives of [the] employees." *Id.* § 158(a)(5). Section 8(a)(1) protects the rights of employees to unionize by prohibiting employers from "interfer[ing] with . . . employees in the exercise of the rights guaranteed" under the NLRA, such as "the right to . . . join[] or assist labor organizations [and] to bargain collectively through representatives of their own choosing." *Id.* §§ 157, 158(a)(1). Section 8(a)(3) similarly prohibits employers from "discriminat[ing] in regard to . . . any term or condition of employment to . . . discourage membership in any labor organization." *Id.* § 158(a)(3).

Section 10(j) authorizes the Board to seek a preliminary injunction in federal district court to enjoin an employer's unfair labor practice. *Id.* § 160(j). The district court may grant "such temporary relief . . . as it deems just and proper" under the NLRA. *Id.* Courts apply the preliminary injunction standard set forth by the Supreme Court in *Winter v. Natural Resource Defense Council, Inc.*, 555 U.S. 7, 20 (2008). *See McDermott ex rel. NLRB v. Ampersand Publ'g, LLC*, 593 F.3d 950, 957 (9th Cir. 2010). In *Winter*, the Supreme Court held that "[a] plaintiff seeking a preliminary injunction must establish [(1)] that he is likely to succeed on the merits, [(2)] that he is likely to suffer irreparable harm in the absence

of preliminary relief, [(3)] that the balance of equities tips in his favor, and [(4)] that an injunction is in the public interest." 555 U.S. at 20.

We review for abuse of discretion a district court's grant of injunctive relief. *Small ex rel. NLRB v. Operative Plasterers' & Cement Masons' Int'l Ass'n Local 200, AFL-CIO*, 611 F.3d 483, 489 (9th Cir. 2010). "The district court abuses its discretion if it relies on a clearly erroneous finding of fact or an erroneous legal standard." *Id.*

I.  *Employer's withdrawal of union recognition in violation of Section 8(a)(1) and (5)*

A.  *Success on the merits*

To obtain injunctive relief, the Director must show a likelihood of success on the merits, which we have held involves showing a "probability that the Board will issue an order determining that the unfair labor practices alleged by the . . . Director occurred and that this Court would grant a petition enforcing that order." *Frankl ex rel. NLRB v. HTH Corp.*, 693 F.3d 1051, 1062 (9th Cir. 2012) (*Frankl II*) (quoting *Frankl ex rel. NLRB v. HTH Corp.*, 650 F.3d 1334, 1355 (9th Cir. 2011) (*Frankl I*)). The petitioner meets this burden if it can "produc[e] some evidence to support the unfair labor practice charge, together with an arguable legal theory." *Id.* (quoting *Frankl I*, 650 F.3d at 1356) (alteration in original). Here, the Director alleges that QVMC engaged in several unfair labor practices, including withdrawal of recognition of the Union and refusal to bargain unconditionally. The District Court held that the Director presented persuasive evidence that QVMC bargained with the

Union after the election until March 16, 2017, when QVMC unlawfully withdrew recognition.

Under the NLRA, employers and unions have a "mutual obligation" to engage in unconditional collective bargaining, which involves "meet[ing] at reasonable times and confer[ring] in good faith with respect to wages, hours, and other terms and conditions of employment." 29 U.S.C. § 158(d); *see also Terrace Gardens Plaza, Inc. v. NLRB*, 91 F.3d 222, 225 (D.C. Cir. 1996). Board certification of a union establishes the union as the collective bargaining representative and creates a duty on the employer to bargain with the representative. *See Brooks v. NLRB*, 348 U.S. 96, 98–99, 104 (1954); *see also Technicolor Gov't Servs., Inc. v. NLRB*, 739 F.2d 323, 327 (8th Cir. 1984).

An employer may not begin to bargain unconditionally with a union and then later withdraw recognition and refuse to bargain unconditionally. 29 U.S.C. § 158(a)(1), (5); *Schwarz Partners Packaging, LLC*, 362 NLRB No. 138, 2015 WL 4179686, at *4 (June 26, 2015). Such a withdrawal of recognition constitutes an unfair labor practice, which the Board may seek to enjoin. 29 U.S.C §§ 158(a)(5), 160(j). The question in this case is whether the Director has shown a likelihood of success in establishing an unlawful withdrawal of recognition. We must determine whether the employer's conduct after the certification constituted *conditional* bargaining that would have preserved the employer's challenge to the Union's certification, or whether the employer's conduct constituted *unconditional* bargaining that waived the employer's right to challenge the Union's certification. The District Court ruled that QVMC's communications with the Union before March 16, 2017, demonstrated unconditional bargaining, which waived the

certification challenge.  The relevant authorities support that conclusion.

Our sister circuits and the Board have considered cases raising similar issues.   We therefore draw upon their decisions for guidance here.  These authorities establish that if an employer wishes to challenge a union's certification, the "employer must refuse to recognize [the] union immediately after the [union] has been certified."  *Technicolor Gov't Servs. Inc.*, 739 F.2d at 327.   The Eighth Circuit in *Technicolor* held that if the employer recognizes a union by entering into negotiations with it, the employer waives its objection that the union's certification is invalid.  *Id.*  The employer in *Technicolor* waived its challenge to the union's certification by entering into negotiations following the union's election and certification and only challenging the certification for the first time as a collateral defense to an unfair labor practice charge.  *Id.*

The D.C. Circuit has similarly held that an employer can reserve its right to challenge union certification by refusing to bargain unconditionally.  *Terrace Gardens Plaza, Inc.*, 91 F.3d at 226.  The court explained that, if the employer contests the certification, the union may file an unfair labor practice charge of refusal to bargain.  *See Id.* at 225.  As an affirmative defense to the charge, the employer may contend the certification was invalid.  *Id.* (citing *Boire v. Greyhound Corp.*, 376 U.S. 473, 477 (1964)).   The D.C. Circuit succinctly stated the principle that the employer "may negotiate with, or challenge the certification of, the [u]nion; it may not do both at once."  *Id.*  Unless the challenge is successful, however, the employer has been guilty of an unfair labor practice.  *Id.* at 226.

The D.C. Circuit in *Terrace Gardens* thus rejected the employer's position that, because it refused to bargain in order to obtain a judicial forum to resolve its challenge to the certification, it should under no circumstances be guilty of an unfair labor practice. *Id.* at 225. The court's response was that the employer had to win the certification challenge in order to defeat the unfair labor practice charge. *Id.* at 226. To preserve its challenge to certification the employer must make that challenge immediately after the certification. *See id.* at 224–26.

The employer in this case argues it has similarly timely reserved its challenge to certification. QVMC's problem is that according to the Director, rather than timely reserving its right to challenge certification, QVMC first negotiated with the Union and then withdrew recognition. An employer cannot engage in unconditional bargaining and later withdraw recognition.

Board authority emphasizes the importance of immediacy in an employer's refusal to bargain unconditionally and illustrates conduct constituting unconditional bargaining. The leading case is *Fred's Inc.*, where the day after certification the employer refused to bargain with the union. 343 NLRB 138, 138 (2004). The Board held in *Fred's* that the employer never unconditionally bargained with the union, because the employer "clearly indicated in its communications with the General Counsel and the [u]nion its intention to test the [u]nion's certification." *Id.* The challenge to the union's certification was therefore preserved.

From the above cases, two principles emerge with relevance to this case. First, to preserve a challenge to the certification, the employer must refuse to bargain

immediately after the union's certification.  *See Technicolor Gov't Servs. Inc.*, 739 F.2d at 327; *Fred's Inc.*, 343 NLRB at 139.  Second, if the employer does not immediately refuse to bargain, it waives its right to challenge the union's certification.  *Technicolor Gov't Servs. Inc.*, 739 F.2d at 327; *see also Schwarz Partners Packaging, LLC*, 2015 WL 4179686, at *3–4 (holding employer waived challenge to union's certification when employer met and bargained with union over full collective bargaining agreement and agreed to schedule new meetings).

Our Circuit's case law is consistent with these principles, because we have observed that an employer's delay in bargaining harms the union and the collective bargaining process.  As we stated in *Small ex rel. NLRB v. Avanti Health Sys., LLC*, 661 F.3d 1180, 1192 (9th Cir. 2011), "a delay in bargaining weakens support for the union."  Such delay reduces the union's bargaining power relative to the employer's.  We recognized in *Frankl I* that such harm may be irreparable; we said that "even if the Board subsequently orders a bargaining remedy, the union is likely weakened in the interim, and it will be difficult to recreate the original status quo with the same relative position of the bargaining parties."  650 F.3d at 1363.  Employees suffer from the employer's delay, and remedies other than injunctive relief may be less than adequate.  As we further recognized in *Frankl I*, "the Board generally does not order retroactive relief, such as back pay or damages, to rank-and-file employees for the loss of economic benefits that might have been obtained had the employer bargained in good faith."  *Id.* These opinions buttress our conclusion that an employer cannot begin unconditional bargaining and later withdraw recognition.  Such actions interfere with the union's collective bargaining rights protected by the NLRA.

Here, the Director has shown a likelihood of success in establishing that QVMC engaged in just such proscribed conduct. The record before the District Court shows that QVMC took part in several bargaining meetings with the Union, discussing specific terms and conditions of employment, and provided information relevant for a comprehensive collective bargaining agreement. These discussions took place after certification and before any refusal to bargain. The District Court concluded that QVMC engaged in "unconditional bargaining which waived the preservation of its certification challenge." *Coffman*, No. 17-cv-05575-YGR, at 3.

QVMC does not dispute that meetings with the Union took place, but argues that they amounted to informational sessions rather than bargaining. The leading Board case on informational meetings is *In re Terracon, Inc.*, 339 NLRB 221 (2003). There, the Board held that a meeting was for informational purposes rather than for bargaining because the employer only met with the union representatives once for a brief period of time and never made any comments conceding the union's majority status or connoting an intent to recognize the union. *In re Terracon, Inc.* 339 NLRB at 225. Specific issues were never the subject of mutual discussion. During the meeting, the employer stated that the specific union demands "were unlikely to be a problem." *Id.* (internal quotation marks omitted). The Board concluded that the employer was simply attempting to "educate itself about the [u]nion's purported purpose and to assess whether or not it should grant recognition to the [u]nion." *Id.*

Here, however, the record indicates the meetings between the Union and QVMC were not mere informational sessions; specific issues were discussed. For two and a half weeks,

before sending its "technical refusal to bargain" letter, QVMC representatives met with Union representatives and discussed various issues, including employee schedule changes and arrangement of a Union representative's presence at an employee's investigatory meeting. QVMC also provided information relevant to the parties' full collective bargaining agreement, promised to furnish more information later, and agreed to schedule a meeting to negotiate a comprehensive collective bargaining agreement. QVMC was likely not, as the employer was in *Terracon*, still "educat[ing] itself about the Union's purported purpose" during that time. *See id.*

Other Board decisions show that, when the employer engages in bargaining discussions, it commits to negotiations and thereby waives any challenge to certification. *See Prof'l Transp., Inc.*, 362 NLRB No. 60, 2015 WL 1510979, at *1–2 (Apr. 2, 2015) (holding employer waived challenge to union's certification when it held several bargaining sessions with union after certification); *In re Konig*, 318 NLRB 901, 904 (1995) (holding employer's conduct "amounted to a waiver of its right to challenge the [union's] certification," because after certification employer did not contest certification's validity "and proceeded instead, just 1 month later, to recognize the [u]nion by engaging in contract negotiations with it").

The Director therefore presented evidence to establish that QVMC engaged in unfair labor practices by recognizing and bargaining unconditionally with the Union and later unlawfully withdrawing recognition of the Union and refusing to unconditionally bargain. The Director established a likelihood of success on the merits.

*B. Irreparable harm, balance of equities, and public interest*

The Director also provided sufficient evidence to demonstrate a likelihood of irreparable harm due to QVMC's unfair labor practices. The Director's evidence indicates irreparable harm from dissipation of employee support for the Union as well as employee fear of retaliation and discrimination by the employer. *See Avanti*, 661 F.3d at 1192; *Frankl I*, 650 F.3d at 1363. The District Court appropriately found that the Union had "offered sufficient evidence of a likelihood of irreparable harm in the absence of an injunction." *Coffman*, No. 17-cv-05575-YGR, at 6.

The District Court further held that the harm to the Union outweighed the harm to QVMC. QVMC contends that the District Court erred in balancing the equities, because QVMC will face significant hardship if forced to recognize and bargain with the Union. QVMC also argues it will face hardship in rescinding all unilateral changes, allowing the Union access to its property, and forcing QVMC to read the District Court's order to its employees. The District Court weighed the equities, finding that the preservation of the status quo as it existed before QVMC's unfair labor practices outweighed any hardship QVMC might suffer if required to bargain. *See NLRB v. Gissel Packing Co.*, 395 U.S. 575, 612 (1969) (holding a bargaining order may be necessary "to re-establish the conditions as they existed before the employer's unlawful campaign"). There was no abuse of discretion.

Finally, the District Court did not abuse its discretion in finding that injunctive relief in this case is in the public interest. We have previously stated that when the "Director makes a strong showing of likelihood of success and of

likelihood of irreparable harm, the Director will have established that preliminary relief is in the public interest." *Frankl I*, 650 F.3d at 1365. We have seen that such a showing has been made.

## II. *Employer's discrimination against employee Arroyo for Union support in violation of Section 8(a)(1) and (3)*

The injunction required that Arroyo be reinstated. QVMC argues that the Union failed to establish a likelihood of success and irreparable harm with regard to the claim that QVMC discriminated against Arroyo for his Union activity. Under Section 8(a)(1) and (3) of the NLRA, an employer commits an unfair labor practice if it interferes with or discourages an employee's right to join a labor union and bargain collectively. 29 U.S.C. §§ 157, 158(a)(1), (3); *Frankl II*, 693 F.3d at 1062. We held in *Frankl II* that an employer discriminates against an employee under the NLRA "when the employee's involvement in a protected activity was a substantial or motivating factor in the employer's decision to discipline or terminate the employee." 693 F.3d at 1062. To establish that the conduct was a substantial or motivating factor, the Director need only show that "the employee was engaged in protected activity, the employer knew of such activity, and the employer harbored anti-union animus." *Id.* After establishing these elements, we shift the burden to the employer "to demonstrate that it would have taken the same action regardless of the employee's union activity." *Id.* As we stated in *United Nurses Associations of California v. NLRB*, an employer cannot overcome this burden "where its 'asserted reasons for a discharge are found to be pretextual.'" 871 F.3d 767, 779 (9th Cir. 2017) (quoting *In re Stevens Creek Chrysler Jeep Dodge, Inc.*, 357 NLRB 633, 637 (2011)).

Here, the Director submitted evidence sufficient to establish a likelihood of success and irreparable harm for the discrimination claim. Contrary to QVMC's assertion, we may consider the affidavits submitted by the Director as evidence at the preliminary injunction stage. *See Asseo v. Pan Am. Grain Co.*, 805 F.2d 23, 26 (1st Cir. 1986) ("Affidavits and other hearsay materials are often received in preliminary injunction proceedings.").

The affidavits show that QVMC's employee Arroyo engaged in protected activity by, among other things, appearing in a pro-Union picture posted on the Union's social media page. QVMC knew of Arroyo's Union support through a manager who saw the post. The manager, shortly after seeing the post and one week before the Union's election, conspired to make Arroyo "hurt" for his Union activity by changing Arroyo's schedule to create transportation issues for his family and cause Arroyo to receive less pay on the different shift. QVMC offered some evidence of a non-discriminatory reason for the shift change, i.e., its policy prohibiting relatives from working together in the same department. However, the Director presented evidence that QVMC had not enforced the policy in the past. QVMC enforced its policy only after it learned of Arroyo's Union support, and only against Arroyo. This is sufficient to establish a prima facie case of unlawful discrimination and that QVMC's asserted justification is pretextual. Thus, the Director has shown a likelihood of success on the claim of discrimination against Arroyo.

The Director also established a likelihood of irreparable harm for the discrimination claim. Such harm includes economic and non-economic benefits to employees. *See Avanti*, 661 F.3d at 1191–92. As the Seventh Circuit has

recognized, if the Director presents evidence of an employer's "clear hostility toward the Union, as well as a pattern of discrimination against employees active in the Union," the Director establishes a likelihood of irreparable harm for a preliminary injunction. *Lineback v. Spurlino Materials, LLC*, 546 F.3d 491, 501–02 (7th Cir. 2008). The record here shows QVMC on several occasions engaged in retaliatory and hostile acts against Union supporters. The Union established a likelihood of irreparable harm for the discrimination claim.

## Conclusion

The District Court's injunction is **AFFIRMED**. This Court's prior order staying the injunction pending appeal is vacated. The mandate shall issue immediately.