**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOSEPH F. FRANKL, Regional
Director of Region 20 of the
National Labor Relations Board,
for and on behalf of the National
Labor Relations Board,
              *Petitioner-Appellee,*

              v.

HTH CORPORATION, a single
employer, DBA Pacific Beach
Hotel; PACIFIC BEACH
CORPORATION, a single employer,
DBA Pacific Beach Hotel, KOA
MANAGEMENT, LLC, a single
employer, DBA Pacific Beach
Hotel,
              *Respondents-Appellants.*

No. 11-18042

D.C. No.
1:11-cv-00451-
JMS-RLP

Appeal from the United States District Court
for the District of Hawaii
J. Michael Seabright, District Judge, Presiding

10689

NATIONAL LABOR RELATIONS
BOARD,
                    *Petitioner,*

                v.

HTH CORPORATION; PACIFIC BEACH
CORPORATION AND KOA
MANAGEMENT, LLC, a single
employer, dba Pacific Beach
Hotel; HTH CORPORATION, dba
Pacific Beach Hotel; KOA
MANAGEMENT, LLC, dba Pacific
Beach Hotel; PACIFIC BEACH
CORPORATION, dba Pacific Beach
Hotel,
                    *Respondents.*

No. 11-71676

NLRB No.
37-CA-7311

HTH CORPORATION; PACIFIC BEACH
CORPORATION, dba Pacific Beach
Hotel; KOA MANAGEMENT, LLC,
dba Pacific Beach Hotel,
                    *Petitioners,*

                v.

NATIONAL LABOR RELATIONS
BOARD,
                    *Respondent.*

No. 11-71968

NLRB No.
37-CA-7311

OPINION

On Petition for Review of an Order of the
National Labor Relations Board

Argued and Submitted
June 14, 2012—Honolulu, Hawaii

Filed September 6, 2012

Before: Mary M. Schroeder, Consuelo M. Callahan, and
N. Randy Smith, Circuit Judges.

Opinion by Judge Schroeder

## COUNSEL

Catherine J. Trafton, NLRB, Washington, DC, for petitioner-appellee Joseph F. Frankl.

Barbara Sheehy, NLRB, Washington, DC, for petitioner-respondent National Labor Relations Board.

Wesley M. Fujimoto, Honolulu, Hawaii, for respondents-petitioners HTH Corporation, et al.

## OPINION

SCHROEDER, Circuit Judge:

These two matters have been consolidated for a single opinion because they both arise out of the same long-running labor dispute. The employer is HTH Corporation, which operates the Pacific Beach Hotel ("the Hotel") in Honolulu. The Union is the International Longshore and Warehouse Union, Local 142. In *NLRB v. HTH Corp.*, we have cross-petitions from the 2011 ruling of the National Labor Relations Board

("NLRB" or "the Board") that between August 2005 and May 2008 HTH committed unfair labor practices in violation of the National Labor Relations Act ("NLRA" or "the Act"), 49 Stat. 449 (1935) (codified at 29 U.S.C. § 151 *et seq.*). *See HTH Corp.*, 356 N.L.R.B. No. 182 (2011). In *Frankl v. HTH Corp.*, HTH appeals from a preliminary injunction that required it to remedy certain actions taken in 2010. These actions are the subject of unfair labor practice charges currently pending before the Board.

The background of the labor dispute is explained at length in our prior opinion, *Frankl v. HTH Corp.* (*Frankl I*), 650 F.3d 1334 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 1821 (2012). We there affirmed a preliminary injunction against HTH pending final Board disposition of the 2005-2008 unfair labor practice charges. The Board resolved those charges in its 2011 ruling, which HTH now asks us to overturn. Notwithstanding the 2010 injunction, HTH repeated the very actions that had been enjoined that year, prompting yet another round of litigation before the Board. The district court granted a second preliminary injunction. HTH now appeals that injunction. We affirm the injunction and grant the Board's application for enforcement of its 2011 ruling.

## I.  Background

Because this is the second time that we have looked at this labor dispute, we provide only a summary recitation of the relevant factual background. A more complete discussion is contained in *Frankl I*, 650 F.3d at 1341, 1356-58. *See also HTH Corp.*, Nos. 37-CA-7311, JD(SF)-35-09, 2009 WL 3147894 (NLRB Sept. 30, 2009).

The Union's organizing drive began more than ten years ago. The first NLRB election was held in July 2002. The Board overturned the first election after finding that HTH had coercively interrogated employees and engaged in other objectionable conduct. *HTH Corp.*, 342 N.L.R.B. 372 (2004).

A second election was held in 2005. Again, the Board found that HTH engaged in unlawful conduct that cast the result of the election in doubt. The Board ruled that if the final vote tally favored the Union the result would stand, but if it favored HTH the election would be overturned. *Pacific Beach Corp.*, 344 N.L.R.B. 1160 (2005). The Union won by one vote and was duly certified on August 15, 2005.

Initial bargaining began in January 2006. Although the parties met 37 times and reached tentative agreement on 170 issues, such apparent progress meant little, because HTH insisted on three provisions that would have eliminated any meaningful role for the Union. HTH demanded, first, a recognition clause that would have retained in HTH the "exclusive right to unilaterally and arbitrarily" change all conditions of employment. The second demand was for a provision that would have retained in the Hotel's management the "sole and exclusive right to manage its workforce at will," including all aspects of hiring, firing, categorizing, and disciplining employees. Finally, HTH insisted on a grievance procedure that routed complaints to Hotel management for final determination. With such provisions, there would have been no effective collective bargaining or union representation.

Then, in December 2006, HTH itself ceased bargaining and assigned management operations to Pacific Beach Hotel Management ("PBHM"), an ostensibly independent entity created by HTH. PBHM took control of the day-to-day operations of the Hotel beginning in January 2007, but HTH remained the owner and continued to call the shots. HTH told the Union to conduct all further negotiations with PBHM but did not disclose to the Union that HTH retained final approval authority over any collective-bargaining agreement that would last more than a year, unless HTH could terminate it on thirty days' notice, or would cost more than $350,000.

Toward the end of 2007, PBHM and the Union seemed close to an agreement. PBHM asked HTH to disclose its

approval authority to the Union and approve an agreement. HTH responded by canceling PBHM's management contract. Bargaining then ceased on December 1, 2007.

HTH took back management of the Hotel and withdrew recognition from the Union, claiming that the Union had lost majority support among the Hotel's employees. HTH then unilaterally changed the employees' terms and conditions of employment by, among other things, increasing the number of rooms housekeepers cleaned per day, requiring all employees to reapply for their jobs, and refusing to rehire seven employees who had been members of the Union bargaining committee, effectively terminating them.

One of the employees HTH declined to rehire was union organizer Rhandy Villanueva. Villanueva had worked in the Hotel's housekeeping department as a houseman for over fourteen years prior to his termination. In 2005, the housekeeping staff had selected Villanueva to be one of its representatives on the Union's negotiating committee. He served continuously on that committee through December 2007, at which time HTH ceased bargaining. Villanueva was not rehired by HTH. Villanueva had no written disciplinary records in his file, although other housemen who were rehired did.

The Union responded to HTH's actions by stepping up its boycotts and demonstrations. The Union also employed Villanueva as a full-time organizer for the Hotel. Hotel management reacted by meeting with the employees in April and May of 2008, warning them that the Union's actions would hurt business, and threatening the loss of jobs. Management encouraged employees to document with the Hotel's Human Resources Department their dissatisfaction with the Union.

HTH's actions prompted the Union to file a number of unfair labor practice charges with the Board. These charges included allegations that HTH had withdrawn recognition of

the Union without just cause, unilaterally changed the terms and conditions of employment, threatened and terminated Hotel employees who were active with the Union, and failed to release to the Union information necessary for collective bargaining. The Union argued that these actions constituted violations of Sections 8(a)(1), (3), and (5) of the Act, which prohibit an employer from interfering with an employee's right to organize and require an employer to bargain in good faith. *See* 29 U.S.C. § 158(a)(1), (3) and (5).

The Regional Director of the Board agreed and initiated enforcement proceedings against HTH. The Regional Director filed a complaint with the Board alleging that HTH violated Sections 8(a)(1), (3) and (5) for the reasons complained of by the Union. After conducting an extensive hearing, an administrative law judge ("ALJ") found that HTH had violated the Act as alleged by the Regional Director. *HTH Corp.*, 2009 WL 3147894. HTH appealed the ALJ's decision to the Board.

In the meantime, the Regional Director asked the District Court for the District of Hawaii for a preliminary injunction under Section 10(j) of the Act in order to prevent HTH from accomplishing its unlawful objectives pending resolution of proceedings before the Board. *See* 29 U.S.C. § 160(j). The district court granted the injunction on March 29, 2010. *Norelli v. HTH Corp.*, 699 F. Supp. 2d 1176 (D. Haw. 2010). Pursuant to the injunction, HTH was required to recognize the Union, bargain in good faith, rescind all unilateral changes to conditions of employment, rehire the wrongfully terminated employees, and resume negotiations toward a collective bargaining agreement. *Id.* at 1206-07. We affirmed the injunction, *Frankl I*, 650 F.3d at 1366, and the Board adopted the ALJ's decision, *HTH Corp.*, 356 N.L.R.B. No. 182.

Although HTH initially reinstated Villanueva, it fired him only three months later for allegedly breaking unwritten, and seemingly minor, Hotel rules. HTH first disciplined Villanueva for placing a case of toilet paper on the top shelf of a

housekeeping closet, and then fired him for entering the Hotel's housekeeping office after-hours to obtain a can of insecticide to spray a guest's hotel room for cockroaches. HTH also continued making unilateral changes to the terms and conditions of employment; it increased the number of rooms employees were required to clean each shift and banned two Union representatives from the Hotel. HTH also refused to disclose financial and other information the Union had requested.

This led the Union to file charges of unfair labor practices with the Board a second time. The Regional Director again agreed with the Union and issued another series of labor complaints that were consolidated by an ALJ. The Regional Director alleged in pertinent part that HTH violated Sections 8(a)(1) and (3) of the Act by disciplining Villanueva and then terminating his employment. The Director further alleged that HTH violated Sections 8(a)(1) and (5) by increasing the number of rooms housekeepers were required to clean, by prohibiting two union representatives from entering the Hotel's property, and by unreasonably refusing to furnish necessary financial information to the Union.

The unfair labor practice charges proceeded before the ALJ, who conducted a sixteen-day evidentiary hearing. On September 13, 2011, the ALJ found that HTH had violated the Act in 2010 as alleged by the Union and the Regional Director. *HTH Corp.*, Nos. 37-CA-7965, JD(SF)-34-11, 2011 WL 4073681 (NLRB Sept. 13, 2011). The ALJ admonished HTH for violating the Act. The ALJ ordered HTH once again to bargain in good faith, to rescind its unilateral changes, to furnish the Union with the information it requested, to reinstate Villanueva, and to post and read aloud to the Hotel's employees a notice of the employees' rights and the Hotel's obligations under the Act. The ALJ's order is currently on appeal to the Board, and the order is materially similar to the 2009 ALJ order the Board upheld in 2011 that we are now asked by the Board to enforce.

The Regional Director, with the Board's authorization, then sought a preliminary injunction in district court to enforce the ALJ's 2011 order. The district court held that the Regional Director had established a likelihood of success on the merits of the underlying unfair labor practice claims, a likelihood of irreparable harm, and that the balance of hardships and the public interest favored the issuance of an injunction. The district court thus granted the Regional Director's petition and issued the preliminary injunction that is now before us.

In summary, HTH asks us to review the Board's 2011 ruling that it violated the Act, and the Board seeks to enforce that ruling. HTH appeals the district court's order entering the second preliminary injunction. We address each ruling in turn.

## II.  *NLRB v. HTH Corporation*: The Board's 2011 ruling on the 2005-2008 unfair labor practices.

In its 2011 ruling, the Board found that HTH violated its statutory duty to bargain in good faith between 2005 and 2008, that it made unilateral changes to the terms and conditions of employment, and that it unlawfully interfered with its employees' right to collectively bargain. *HTH Corp.*, 356 N.L.R.B. No. 182. The Board now seeks enforcement of its order requiring HTH to prospectively bargain in good faith, rescind its unilateral changes, and cease interfering with its employees' rights under the Act.

HTH challenges the Board's decision on two grounds. First, it contends that its bargaining position from August 15, 2005, up until the transfer of management to PBHM at the end of 2006 was not in bad faith. Second, it claims that it could not have violated the Act after late 2007 by withdrawing recognition of the Union because the Union by then had lost majority support.

The Board found that HTH violated Sections 8(a)(1) and (5) of the Act (prohibiting an employer from interfering with

its employees' collective bargaining rights and requiring an employer to bargain in good faith) in the negotiations that took place from the time of the Union's initial certification in 2005 until the end of 2006 when it substituted PBHM in the negotiations. The Board found that HTH's insistence on three provisions was unacceptable because each prevented any good faith agreement with the Union. The provisions would have given HTH unilateral power to determine all conditions and terms of employment and resolve all employee complaints. The Board found that the Hotel bargained in bad faith because these demands demonstrated that, although HTH went through the motions of bargaining, it never intended to reach an agreement.

**[1]** In its petition to review the Board's ruling, HTH argues that its demands reflected hard bargaining, not bad faith. However, as we have already recognized during the course of this dispute, under the NLRA an employer cannot insist on provisions that "would exclude the labor organization from any effective means of participation in important decisions affecting the terms and conditions of employment of its members." *Frankl I*, 650 F.3d at 1359 (quoting *United Contractors, Inc.*, 244 N.L.R.B. 72, 73 (1979)) (internal quotation marks omitted). These demands excluded the Union from any meaningful representational role. Indeed, the record shows that HTH adopted a calculated bargaining posture that ensured all bargaining would be futile. The Board has long recognized that such a bargaining posture conflicts with the employer's statutory obligation to bargain in good faith. *See Liquor Indus. Bargaining Grp. & Fedway Assocs.*, 333 N.L.R.B. 1219, 1220-21 (2001) (finding employer's demand for control over wages constituted bad faith bargaining because it "eliminated entirely the Union's role" and showed the employer had "no real intent to reach a collective-bargaining agreement"); *Radisson Plaza Minneapolis*, 307 N.L.R.B. 94, 95 (1992) (finding that a provision giving an employer the right to change policies at any time constituted bad faith bargaining); *Hydrotherm, Inc.*, 302 N.L.R.B. 990,

994-95 (1991) (concluding that a proposal requiring the union to sacrifice its statutory rights without offering anything significant in return indicates bad faith).

**[2]** Therefore, substantial evidence supports the Board's finding that HTH adhered to unreasonable positions on key issues during the negotiations. HTH cites no evidence to the contrary. The Board's finding must be upheld. 29 U.S.C. § 160(e); *Retlaw Broad. Co. v. NLRB*, 53 F.3d 1002, 1005-06 (9th Cir. 1995) (upholding the NLRB's findings if supported by substantial evidence).

The Board also concluded that HTH violated Sections 8(a)(1), (3) and (5) of the Act when, beginning in October 2007, HTH unilaterally promulgated employment policies that unlawfully discouraged employees from engaging in protected activity. The Board found such actions included withdrawing recognition of the Union, discharging seven employees because they were union activists, threatening employees with the loss of their jobs if the Hotel had to close because of boycotts, unlawfully polling employees concerning their union sympathies, and unilaterally closing a Hotel restaurant.

HTH maintains it did not commit these unfair labor practices because it believed by October 2007, the Union lacked majority support. Because the Union was illegitimate at that point, HTH argues, it was no longer required to recognize and bargain with the Union. HTH offers no objective evidence that the Union had lost majority support at that time.

**[3]** An employer cannot refuse to recognize a union as the elected representative of its employees on the basis of a subjective belief the union has lost support. The last time HTH was before this court, we expressly held that an employer may withdraw recognition from a union only when it has "objective evidence." *Frankl I*, 650 F.3d at 1360 (citing *Levitz Furniture Co. of the Pac., Inc.*, 333 N.L.R.B. 717, 723-25

(2001)). "Objective evidence" consists of a showing that the union has "in fact" lost the support of a majority of employees. *Levitz*, 333 N.L.R.B. at 725. An example of such objective evidence would be an uncoerced petition signed by a majority of the employees in the bargaining unit. *See id.*

**[4]** HTH did not show any objective basis for believing there was a lack of majority support for the Union. HTH has offered only testimony from a handful of employees concerning the reaction of other employees to the Union boycott. This amounts to no more than evidence of the employees' subjective assessment of the situation and is therefore insufficient. *See id.* at 727-28 (noting that the Board will "not consider employees' unverified statements regarding other employees' antiunion sentiments to be reliable evidence of opposition to the union" for purposes of unilateral withdrawal of recognition). Because HTH failed to show a loss of majority support following the Union elections, the Board's finding that HTH repeatedly violated the Act beginning in late 2007 was amply supported by the evidence. *See id.* at 725 (holding that even an employer with objective evidence "withdraws recognition at its peril").

**[5]** The Board further found that, in December 2007, HTH terminated seven employees, including Villanueva, because they were union activists. The Board's finding of anti-union motivation is supported by the record. It shows that HTH chose to retain employees in similar positions who had worse employment records than Villanueva. For example, another houseman, who was not active in the Union, was rehired even though he had been disciplined five times in a seven-month period. The record also supports the finding that Villanueva was a key participant in Union organizing and bargaining. Thus, we must uphold the Board's conclusion that Villanueva's termination was motivated by anti-union animus. *See Clear Pine Mouldings, Inc. v. NLRB*, 632 F.2d 721, 726 (9th Cir. 1980) ("[T]he determination of motive is particularly within the purview of the Board.").

To remedy these unfair labor practices, the Board extended the certification period for one full year, ordered HTH to pay costs and expenses incurred by the Union in the preparation and conduct of collective bargaining negotiation sessions, and issued a broad cease and desist order forbidding HTH from violating the Act in any manner.

**[6]** We must enforce these measures unless they are unreasonable. *See NLRB v. Dist. Council of Iron Workers of the State of Cal.*, 124 F.3d 1094, 1098 (9th Cir. 1997). Here, the Board's extension of the certification period by one full year was a reasonable application of the Act. HTH argues that the numerous meetings and tentative agreements reached with the Union early on show that some part of the original year-long certification period was not wasted. However, we need not sort through the original certification period to determine how many days of bargaining were productive and how many were stymied by HTH's bad faith. *NLRB v. Nat'l Med. Hosp. of Compton*, 907 F.2d 905, 910-11 (9th Cir. 1990) ("[T]he extension time need not be the product of 'simple arithmetic calculation.' "). The record shows that HTH's continued defiance of the labor laws is the reason the parties, after years of delay, still have not struck a collective-bargaining agreement. *See H.K. Porter Co. v. NLRB*, 397 U.S. 99, 100 (1970) ("This delay . . . is not because the case is exceedingly complex, but . . . because of the skill of the [employer] in taking advantage of every opportunity for delay."); *cf. Am. Med. Resp.*, 346 N.L.R.B. 1004 (2006). We thus enforce the Board's decision to extend the certification period.

**[7]** The Board's imposition of costs and expenses was also a reasonable application of the Act. The Board followed its standard for awarding expenses set out in *Frontier Hotel & Casino*, 318 N.L.R.B. 857, 859 (1995), *enfd. in relevant part sub nom.*, *Unbelievable, Inc. v. NLRB*, 118 F.3d 795 (D.C. Cir. 1997). Reimbursement is proper in cases of unusually aggravated misconduct, like the case at hand, "where it may fairly be said that [an employer's] substantial unfair labor

practices have infected the core of the bargaining process to such an extent that their effects cannot be eliminated by the application of traditional remedies." *See Unbelievable, Inc.*, 118 F.3d at 798 (internal quotation marks omitted). Here, the Union wasted resources over a period of years during which HTH had no intention of reaching an agreement. HTH is not entitled to benefit financially from the consequences of the delay created by its unlawful bargaining tactics. *See Frontier*, 318 N.L.R.B. at 858 ("[L]imiting the remedy to the conventional bargaining order would effectively permit the Respondent to benefit from its violations of the Act by ensuring bargaining with Unions that have been economically weakened by the Respondent's misconduct.").

**[8]** To help prevent future violations the Board also issued a broad cease and desist order. This too was a reasonable application of the Act. Such an order is appropriate "when a respondent is shown to have a proclivity to violate the Act, or has engaged in such egregious or widespread misconduct as to demonstrate a general disregard for the employees' fundamental statutory rights." *NLRB v. Blake Constr. Co., Inc.*, 663 F.2d 272, 285 (D.C. Cir. 1981) (quoting *Hickmott Foods, Inc.*, 242 N.L.R.B. 1357, 1357 (1979)). This standard has been met and exceeded here.

**[9]** We therefore conclude that substantial evidence supports the Board's 2011 ruling and grant the Board's petition for enforcement of its decision regarding HTH's conduct during 2005-2008. We turn now to the 2011 preliminary injunction relating to HTH's conduct in 2010, the second injunction issued by the district court in this labor saga.

## III. *Frankl v. HTH Corporation*: HTH's appeal from the second preliminary injunction.

HTH contends that the district court abused its discretion in granting a preliminary injunction with respect to three of the Regional Director's unfair labor practice claims. *See Small v.*

*Avanti Health Sys., LLC*, 661 F.3d 1180, 1186 (9th Cir. 2011) (abuse of discretion standard). HTH specifically challenges the district court's orders that it reinstate Rhandy Villanueva a second time, rescind unilateral restrictions imposed on Union representatives' access to Hotel premises, and provide to the Union financial information that is necessary to continue the parties' bargaining efforts.

A district court may grant a Regional Director's request for a preliminary injunction under Section 10(j) of the NLRA so long as the Director establishes that he is likely to succeed on the merits of the underlying unfair labor practice claims, that irreparable harm is likely in the absence of preliminary relief, that the balance of hardships tips in his favor, and that an injunction is in the public interest. *Frankl I*, 650 F.3d at 1355 (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). The district court did not abuse its discretion in holding that the Regional Director met those requirements in this case. We thus affirm the preliminary injunction.

## A.  Likelihood of success on the merits.

To show a likelihood of success on the merits the Regional Director must show a "probability that the Board will issue an order determining that the unfair labor practices alleged by the Regional Director occurred and that this Court would grant a petition enforcing that order, if such enforcement were sought." *Id.* The Regional Director has carried his burden if he can "produc[e] some evidence to support the unfair labor practice charge, together with an arguable legal theory." *Id.* at 1356 (internal quotation marks omitted); *see also Small*, 661 F.3d at 1187. In cases like this, moreover, we owe the Regional Director special deference because the Board took the rare step of endorsing the Director's Section 10(j) petition. *Small*, 661 F.3d at 1187. We have observed that this may "signal [the Board's] future decision on the merits, assuming the facts alleged in the petition withstand examination at trial." *Id.* (internal quotation marks omitted).

In this appeal, HTH argues that the district court erred in finding that it likely violated Sections 8(a)(1), (3) and (5) by disciplining and then terminating Villanueva, banning two union representatives from Hotel property, and withholding certain financial information.

### 1.   The discipline and termination of Villanueva.

HTH terminated Villanueva again in 2010, and the district court once again held Villanueva's employment was likely terminated on account of his union activity and ordered HTH to reinstate him a second time.

**[10]** Sections 8(a)(1) and (3) of the Act prohibit employers from interfering with or discouraging an employee's right to join a labor union and bargain collectively. An employer violates Section 8(a)(3) when the employee's involvement in a protected activity was a substantial or motivating factor in the employer's decision to discipline or terminate the employee. Healthcare *Emps. Union, Local 399 v. NLRB*, 463 F.3d 909, 919 (9th Cir. 2006). This can be established by showing that the employee was engaged in protected activity, the employer knew of such activity, and the employer harbored anti-union animus. *Intermet Stevensville*, 350 N.L.R.B. 1270, 1274 (2007). Once these are shown, the burden shifts to the employer to demonstrate that it would have taken the same action regardless of the employee's union activity. *Id.*; *see also Healthcare Emps. Union*, 463 F.3d at 919.

Here, the district court held that the Regional Director was likely to succeed in showing that HTH violated Sections 8(a)(1) and (3) when it disciplined and then terminated Villanueva in 2010. HTH does not argue that the Regional Director failed to show that it knew of Villanueva's union involvement and that it harbored anti-union animus. Indeed, it would be difficult to do so given the decisions of the agency and courts finding that HTH wrongfully fired Villanueva once before because of his union activities. HTH argues on appeal only

that it has shown that it would have disciplined and terminated Villanueva regardless of his union activity.

**[11]** Specifically, HTH argues that it properly disciplined Villanueva and then terminated his employment because he failed to follow unwritten Hotel rules, lied to gain access to the Hotel's housekeeping office, and stole a can of insecticide. The record created before the ALJ and relied upon by the district court, however, tells a different story, one that supports the Regional Director's position that HTH disciplined and terminated Villanueva in violation of the Act. The Regional Director need only "produc[e] some evidence to support the unfair labor practice charge, together with an arguable legal theory." *Frankl I*, 650 F.3d at 1356 (internal quotation marks omitted). Here, the record shows that the Hotel had no established rules for stocking housekeeping closets, accessing the housekeeping office after hours, or using bug spray. Even if the Hotel had established rules, there is no evidence that Villanueva knowingly violated such rules.

The ALJ also found Villanueva to be a credible witness and dismissed as unfounded HTH's assertions that Villanueva was a dishonest and deceitful employee. An ALJ's credibility determinations will be upheld "unless they are inherently incredible or patently unreasonable." *See New Breed Leasing Corp. v. NLRB*, 111 F.3d 1460, 1465 (9th Cir. 1997) (internal quotation marks omitted). On appeal, HTH presents us with nothing that would suggest the ALJ's credibility determination was unreasonable.

The ALJ's findings were emphatic that the Hotel "made up its rules in ad hoc fashion" to "rid itself yet again of a union supporter." Although not binding on this court, this determination by the ALJ serves as a useful benchmark for gauging the Regional Director's likelihood of success on the merits. *See Small*, 661 F.3d at 1186. Indeed, the district court agreed with the ALJ's finding, ruling that HTH was "looking for reasons to discipline Villanueva and contoured the Hotel rules to

suit their needs," thereby evincing an "animus towards Villanueva." Given HTH's history of animus against Villanueva's union activity and the lack of clear rules, we see no reason to disturb the district court's determination.

**[12]** HTH points to some conflicting evidence in the record to support its position, but this alone is insufficient to warrant a reversal. Conflicting evidence in the record "does not preclude the Regional Director from making the requisite showing for a section 10(j) injunction." *Scott ex rel. NLRB v. Stephen Dunn & Assocs.*, 241 F.3d 652, 662 (9th Cir. 2001), *abrogated on other grounds as recognized by Frankl I*, 650 F.3d at 1355. Here, at the very least, there is sufficient evidence to support the Regional Director's unfair labor practice charges together with an arguable legal theory. *See Frankl I*, 650 F.3d at 1356. We thus hold that the district court acted well within its discretion in concluding that the Regional Director demonstrated a likelihood of success on the merits of these unfair labor practice claims involving Villanueva.

### 2. Unilateral changes to Union representatives' access to Hotel property.

**[13]** The district court ordered HTH to allow Union representatives Dave Mori and Carmelita Labtingao access to the Hotel because HTH had unilaterally changed the terms and conditions of employment so as to establish a likely violation of Section 8(a)(5) of the Act. This section makes it unlawful for "an employer . . . to refuse to bargain collectively with the representatives of his employees." 29 U.S.C. § 158(a)(5). Where an employer has a past practice of providing union representatives access to its facilities, that past practice becomes a term and condition of employment that cannot be changed without first notifying and bargaining with the union to agreement or good faith impasse. *Ernst Home Ctrs., Inc.*, 308 N.L.R.B. 848, 865 (1992); *Granite City Steel Co.*, 167 N.L.R.B. 310, 315-16 (1967).

HTH does not dispute that since 2006 it had a practice of allowing Union representatives access to Hotel facilities provided they requested permission and, once on Hotel property, they refrained from entering unauthorized areas or disrupting Hotel operations. In this case, Union representative Mori requested permission to have lunch at the Hotel's Oceanarium Restaurant with fellow Union organizer Labtingao. HTH granted Mori's request, but, shortly following their visit, HTH forbade them both from thereafter entering Hotel property and publicly posted notices to the employees announcing the banishment.

HTH contended before the district court that Mori and Labtingao disrupted Hotel operations during their luncheon and therefore the banishment was consistent with the access policy. The Regional Director's position was that HTH fabricated the alleged disruption to justify its unilateral change of the access agreement.

**[14]** The evidence before the ALJ, upon which both parties relied, was conflicting as to whether there had been a disruption. As noted by the district court, the ALJ credited the Regional Director's version of the incident. HTH does not dispute the ALJ's credibility determination. *See New Breed Leasing*, 111 F.3d at 1465 (holding that an ALJ's credibility determinations will be upheld by the court "unless they are 'inherently incredible or patently unreasonable' "). HTH cites to conflicting evidence in the record, but that is insufficient to overturn the injunction. *See Scott*, 241 F.3d at 662. Given this record, we conclude that the district court did not abuse its discretion in holding the Regional Director had showed a likelihood of success in establishing an unfair labor practice.

### 3. The refusal to release necessary financial information.

**[15]** The district court ordered HTH to give certain financial information to the Union. As part of its duty to bargain

in good faith, an employer must provide the union with information that is relevant and necessary to bargaining. *H&R Indus. Servs., Inc.*, 351 N.L.R.B. 1222, 1223 (2007) (citing *NLRB v. Acme Indus. Co.*, 385 U.S. 432, 435-36 (1967)). For instance, when an employer justifies its bargaining position during negotiations on an inability to pay, this entitles the union to request financial documents sufficient to substantiate the employer's position. *NLRB v. Truitt Mfg. Co.*, 351 U.S. 149, 152-53 (1956). An employer may limit its disclosure by demonstrating "a 'legitimate and substantial' concern for employee confidentiality interests which might be compromised by disclosure." *Ormet Aluminum Mill Prods. Corp.*, 335 N.L.R.B. 788, 801 (2001) (quoting *Detroit Edison v. NLRB*, 440 U.S. 301, 315, 318-20 (1979)). Whether an employer has failed to bargain in good faith by refusing to provide certain financial documents turns upon the particular facts of a case. *Truitt Mfg. Co.*, 351 U.S. at 153.

Here, HTH claimed that an inability to pay justified unilateral changes to the terms and conditions of employment. The Union, in accordance with *Truitt*, as well as with the district court's first preliminary injunction, requested that HTH release specific financial documents to justify the change in policy. In response, HTH required the Union's accountant to sign a confidentiality agreement and then provided only a one-page, uncertified Statement of Income and Loss for 2008 and another for 2009—far less information than the Union had requested. The Union's accountant repeatedly informed HTH, and later the ALJ, that the information HTH had released was insufficient for him to render any opinion on HTH's financial status.

HTH contends that under *Albany Garage, Inc.*, 126 N.L.R.B. 417 (1960), the information it provided was sufficient for it to discharge its duty. *Albany Garage,* however, is a very different case. In *Albany Garage*, the employer voluntarily substantiated its claim of inability to pay by providing the union with a financial statement that included a compara-

tive sales and profit report. *Id.* at 418. The union responded by asserting a general need for additional, but unspecified, financial information. *Id.* at 432. The employer refused the union's request. *Id.* The Board ruled that the employer did not violate the Act because the employer had a history of bargaining in good faith, the accuracy of the financial information provided was not questioned, the union did not articulate why it needed additional information, and the employer had provided the same type of financial information to the union as well as to the employer's bank, mortgagee, and tax authorities in the past. *Id.* at 418-19, 432-33.

Here, unlike *Albany Garage*, HTH has had a long history of negotiating in bad faith with the Union, and the accuracy of the financial documents HTH has provided is at issue. In addition, the Union has articulated why it needs additional financial information. The Union's accountant testified before the ALJ that because the statements were not certified, he had no confidence in their accuracy and no way to verify the numbers. The district court correctly noted that the Board considers uncertified financial statements insufficient to meet the employer's burden. *See R.E.C. Corp.*, 307 N.L.R.B. 330, 333 (1992); *Am. Model & Pattern*, 277 N.L.R.B. 176, 184 (1985); *Tony's Meats, Inc.*, 211 N.L.R.B. 625, 626-27 (1974). HTH ignores this precedent, instead arguing that the information provided was sufficient because it gave the same type of information to the Board and to the Union in other cases. HTH fails to discuss what exactly was required in those other cases or why they are probative here. As the district court also correctly noted, HTH's "naked assertion[s]" are insufficient for it to carry its burden.

**[16]** HTH further implies that it limited disclosure due to confidentiality concerns, but, because it did not raise this argument below, it is waived. *See Lambert v. Ackerley*, 180 F.3d 997, 1011 (9th Cir. 1999) (waiver rule). Even if we were to consider this argument, HTH's confidentiality concerns were adequately addressed because the Union's accountant

signed a confidentiality agreement with HTH. *See Gas Spring Co.*, 296 N.L.R.B. 84, 99 (1989). We therefore conclude that the district court did not abuse its discretion by holding that the Regional Director showed a likelihood of success of establishing HTH committed an unfair labor practice by not disclosing the requested financial documents.

**B.  The remaining requisites for the injunction: Irreparable harm, balance of hardships, and public interest.**

**[17]** Our conclusion on the remaining required factors for an injunction mirrors our holding in *Frankl I*, where we upheld the first injunction against HTH in response to its substantially identical alleged violations of the Act. 650 F.3d at 1362-66. No less than in *Frankl I*, the various unfair labor practices at issue in this appeal, if allowed to continue, will cause irreparable harm to the Union and HTH's employees. HTH's unwarranted discipline and termination of Villanueva are likely to cause irreparable harm because the discipline and "discharge of active and open union supporters" sends a message that the employer will take action against union supporters, which adversely impacts employee interest in and support of unionization. *Id.* at 1363 (quoting *Pye v. Excel Case Ready*, 238 F.3d 69, 74 (1st Cir. 2001)) (internal quotation marks omitted). HTH's public banning of Union representatives and its refusal to provide necessary financial information similarly show a failure to bargain in good faith, which "has long been understood as likely causing an irreparable injury to union representation." *Id.* at 1362. The district court thus did not abuse its discretion by finding a likelihood of irreparable harm stemming from these actions.

**[18]** We held in *Frankl I* that, because the Regional Director showed irreparable harm flowing from identical violations by HTH, the balance of the hardships favored an injunction. *Id.* at 1365. Allowing unlawful labor practices to continue damages the Board's very ability to enforce the statute. *See*

*id.; see also Small*, 661 F.3d at 1196 (noting that the court must consider whether failing to issue the injunction will enable the employer to succeed in resisting the union organizing effort). HTH's claims to hardship are all premised on its version of the events—that it will be forced to rehire a dishonest employee, grant access to disruptive Union representatives, and disclose confidential financial information. Both the district court and the ALJ soundly rejected HTH's position, and, given HTH's ongoing engagement in unfair labor practices, we have no reason to disagree with their conclusion. In fact, we agree that HTH will face little hardship by being required to do simply what the law demands. We therefore hold that it was not an abuse of discretion for the district court to find that the balance of hardships weighed in favor of granting an injunction.

We have repeatedly held the public interest is served by ensuring that an unfair labor practice will not continue while the Board takes time to investigate and adjudicate the charge. *Small*, 661 F.3d at 1197 (citing *Frankl I*, 650 F.3d at 1365). HTH's only argument that the public interest is not served by this injunction is that the Board will, eventually, likely grant the same relief. We rejected this exact argument made by HTH in *Frankl I*, holding that in most labor cases "a § 10(j) remedy *will* be identical, or at least very similar, to the Board's final order." *Frankl I*, 650 F.3d at 1366 (emphasis in original); *see also Small*, 661 F.3d at 1198 (reaffirming this conclusion). This is, as Yogi Berra said, "deja vu all over again." If HTH can countermand orders of the agency and of the district court, as it has done here, and succeed in its unlawful labor practices by exploiting administrative delays, then relief pursuant to Section 10(j) and the employees' statutory rights under the NLRA become meaningless. *See Small*, 661 F.3d at 1197-98. The district court, therefore, properly found that enforcement of the ALJ's order serves the public interest.

## IV.   Conclusion

Our rulings likely come as no surprise to the parties. Two themes repeat themselves in the decade-long history of this dispute. The first is HTH's defiance of the Labor Act and its employees' statutory rights. The second is HTH's consistent losses before the agency and the courts. A skeptical adjudicator might question whether HTH has ever taken seriously its obligations under the law. We hope that we do not need to consider that question again.

The Board's petition for enforcement in No. 11-71676 is GRANTED in whole and HTH's petition for review in No. 11-71968 is DENIED. The district court's preliminary injunction in No. 11-18042 is AFFIRMED.