NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

AUG 6 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| INTERNATIONAL ASSOCIATION OF MACHINISTS DISTRICT 751,<br><br>Petitioner,<br><br>v.<br><br>NATIONAL LABOR RELATIONS BOARD,<br><br>Respondent,<br><br>AIM AEROSPACE SUMNER, INC.,<br><br>Intervenor. | No.   19-71501<br><br>NLRB Nos. 19-CA- 203455<br>               19-CA-203586<br><br>MEMORANDUM[*] |
| AIM AEROSPACE SUMNER, INC.,<br><br>Petitioner,<br><br>v.<br><br>NATIONAL LABOR RELATIONS BOARD,<br><br>Respondent,<br><br>INTERNATIONAL ASSOCIATION OF MACHINISTS DISTRICT 751, | No.   19-71766<br><br>NLRB Nos. 19-CA-203455<br>               19-CA-203586 |

---

    [*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Intervenor.

NATIONAL LABOR RELATIONS BOARD,

Petitioner,

v.

AIM AEROSPACE SUMNER, INC.,

Respondent.

No. 19-71804

NLRB Nos. 19-CA-203455
19-CA-203586

On Petition for Review of an Order of the
National Labor Relations Board

Argued and Submitted July 8, 2020
Seattle, Washington

Before: CLIFTON, D.M. FISHER,** and M. SMITH, Circuit Judges.

The International Association of Machinists, District 751 (the Union) petitions for review of an order by the National Labor Relations Board holding that AIM Aerospace Sumner, Inc. did not violate the National Labor Relations Act (NLRA) when it withdrew recognition from the Union. AIM petitions for review of the portion of the Board's order holding that AIM violated the NLRA when it promoted employee Lori-Ann Downs-Haynes. The General Counsel of the

---

** The Honorable D. Michael Fisher, United States Circuit Judge for the U.S. Court of Appeals for the Third Circuit, sitting by designation.

19-71501

National Labor Relations Board files a cross-application for enforcement of the order in its entirety. We have jurisdiction under 29 U.S.C. § 160(e) and (f), and we enforce the order.

We "uphold[] decisions of the [Board] 'if its findings of fact are supported by substantial evidence and if [it] correctly applied the law,' and defer[] to any 'reasonably defensible' interpretation of the NLRA." *Retlaw Broad. Co. v. NLRB*, 53 F.3d 1002, 1005 (9th Cir. 1995) (quoting *NLRB v. Gen. Truck Drivers, Local No. 315*, 20 F.3d 1017, 1021 (9th Cir. 1994)); 29 U.S.C. § 160(e).

The Board did not err in concluding that AIM committed an unfair labor practice by transferring Downs-Haynes to a different position and raising her wage. It is an unfair labor practice for an employer, "by discrimination in regard to hire or tenure of employment or any term or condition of employment[,] to encourage or discourage membership in any labor organization." 29 U.S.C. § 158(a)(3). An employer's motivation is assessed through a burden-shifting test. *Healthcare Emps. Union, Local 399 v. NLRB*, 463 F.3d 909, 919 (9th Cir. 2006) (citing *Wright Line*, 251 N.L.R.B. 1083, 1089 (1980)).

At the first step of the test, the General Counsel met his burden to establish AIM's motivation by "showing that [1] [Downs-Haynes] was engaged in protected activity, [2] [AIM] knew of such activity, and [3] [AIM] harbored anti-union animus." *Frankl ex rel. NLRB v. HTH Corp.*, 693 F.3d 1051, 1062 (9th Cir. 2012).

The first two elements are undisputed. The Board's finding that the third element can be inferred is supported by substantial evidence, namely: the suspicious timing; the fact that AIM did not consider any external candidates, including those with more experience than Downs-Haynes; and the fact that the HR director's explanations for Downs-Haynes' promotion were implausible. *Remington Lodging & Hosp., LLC*, 363 N.L.R.B. No. 6 (Sept. 15, 2015).[1]

At the second step of the test, "the burden shifts to the employer to demonstrate that it would have taken the same action regardless of the employee's union activity." *Frankl*, 693 F.3d at 1062. Here, the ALJ held that there were "simply too many irregularities" surrounding the hiring to conclude that it was "based on legitimate motives," and this conclusion is supported by substantial evidence. Therefore, AIM failed to carry its second-step burden. In sum, the Board did not err in concluding that hiring Downs-Haynes for the receiving clerk position violated the NLRA.

The Board also did not err in concluding that AIM lawfully withdrew recognition from the Union. "[E]mployers may not withdraw recognition in a context of serious unremedied unfair labor practices tending to cause employees to

---

[1] No employee need be disadvantaged to show discrimination under 29 U.S.C. § 158(a)(3). *See, e.g.*, *Evergreen Am. Corp.*, 348 N.L.R.B. 178, 180 (2006) (across-the-board benefits constituted NLRA discrimination); *Flying Foods Grp., Inc.*, 345 N.L.R.B. 101, 104 (2005) (same). Title VII employment discrimination cases do not illuminate the requirements for discrimination under the NLRA.

become disaffected from the union." *Frankl v. HTH Corp.*, 650 F.3d 1334, 1361 (9th Cir. 2011) (quoting *Levitz Furniture Co. of the Pac., Inc.*, 333 N.L.R.B. 717, 717 n.1 (2001)). An employer may engage in two kinds of unfair practices: those that are "distinct from any unlawful assistance . . . in the actual decertification petition," and those that are "directly related to an employee decertification effort, such as actively soliciting, encouraging, promoting, or providing assistance in the initiation, signing, or filing of [a] . . . petition." *SFO Good-Nite Inn, LLC*, 357 N.L.R.B. 79, 79-80 (2011) (internal quotation marks and citations omitted). Where the employer does not directly promote the petition, we apply a four-part causation analysis to determine whether the employer's unfair practices led to the petition's success. *Id.* at 79. We consider:

> (1) The length of time between the unfair labor practices and the withdrawal of recognition; (2) the nature of the illegal acts, including the possibility of their detrimental or lasting effect on employees; (3) any possible tendency to cause employee disaffection from the union; and (4) the effect of the unlawful conduct on employee morale, organizational activities, and membership in the union.

*Master Slack Corp.*, 271 N.L.R.B. 78, 84 (1984). On the other hand, where the employer directly interferes with a petition, it does not get the benefit of a multi-factor analysis. Rather, we "presume[] that the employer's unlawful meddling tainted any resulting expression of employee disaffection." *SFO Good-Nite Inn*, 357 N.L.R.B. at 80. This presumption derives from *Hearst Corp.*, 281 N.L.R.B. 764, 765 (1986).

19-71501

*Hearst*'s presumption does not apply here.[2] Although AIM promoted Downs-Haynes during her signature-gathering effort, substantial evidence supports the conclusion that AIM did not directly encourage the petition. *See, e.g.*, *SFO Good-Nite Inn*, 357 N.L.R.B. at 80 (direct encouragement consisted of "attempt[ing] to coerce three . . . [employees] to sign . . . petitions and threaten[ing] another employee with discipline for speaking against decertification"). Therefore, the *Master Slack* factors apply.

The Board did not err in its application of the *Master Slack* factors. While the length of time between the unfair practice and withdrawal of recognition weighs in favor of finding the petition to be tainted, the other three factors weigh against any taint. The nature of the violation was, in the Board's words, a "single personnel action." Downs-Haynes' promotion was not akin to, for example, the "serious and flagrant" violations in *Master Slack*, which "included interrogations, threats to move or close the plant, threats of discharge, and discharges of 28 employees." 271 N.L.R.B. at 79. The promotion would have had little tendency to

---

[2] The Union's *Hearst* argument is not waived, because the Board majority and dissent addressed the applicability of the *Hearst* presumption. "Ordinarily, when an agency has actually addressed an issue, the policies underlying the exhaustion doctrine . . . are satisfied." *Casino Pauma v. NLRB*, 888 F.3d 1066, 1081 (9th Cir. 2018) (alteration in original) (quoting *W. Radio Servs. Co. v. Qwest Corp.*, 530 F.3d 1186, 1203 (9th Cir. 2008)). If "the Board . . . got the gist of [an arguably waived] argument," we consider it to be preserved. *Id.* at 1080-81. Therefore, we will deny as moot the Union's motion to supplement the record on appeal.

19-71501

cause employee disaffection from the union and little effect on morale and union membership, given that other employees had no way of knowing how many applicants there were or how qualified they were, and given that the only other internal candidate had also signed the petition.

AIM's assistance to Downs-Haynes with the petition was permissible: it consisted of objective facts provided in response to Downs-Haynes' requests. *E. States Optical Co.*, 275 N.L.R.B. 371, 372 (1985). Nor did AIM's promotion of Downs-Haynes render its otherwise-permissible ministerial aid unlawful. *Wire Prods. Mfg. Corp.*, 326 N.L.R.B. 625, 635 (1998) (although employer committed other NLRA violations, assistance with decertification petition was ministerial); *Ernst Home Centers, Inc.*, 308 N.L.R.B. 848, 848-50 (1992) (same).

**AFFIRMED.**

19-71501